Filed 1/7/16; pub. & mod. order 1/26/16 (see end of opn.)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| CITY OF CORONA, | |
| Plaintiff and Respondent, | E062869 |
| v. | (Super.Ct.No. RIC1412756) |
| AMG OUTDOOR ADVERTISING, INC. et al., | O P I N I O N |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County. Daniel A. Ottolia, Judge. Affirmed.

Raymond N. Haynes; Cole & Loeterman and Dana M. Cole for Defendants and Appellants.

Dean Derleth, City Attorney, and John D. Higginbotham, Assistant City Attorney, for Plaintiff and Respondent.

1

## I. INTRODUCTION

Defendants and appellants, AMG Outdoor Advertising, Inc. (AMG), and others, appeal from a January 23, 2015, order granting a preliminary injunction in favor of plaintiff and respondent, City of Corona (the City), requiring defendants to cease using and immediately remove a billboard, or outdoor advertising sign, that AMG erected in the City without a city or state permit.[1]

Defendants principally claim that the City is enforcing Ordinance No. 2729 (the 2004 ordinance) against them in an impermissibly discriminatory manner, because the City has allowed another billboard operator, Lamar Advertising Company (Lamar), to erect *new* billboards in the City, after the 2004 ordinance was enacted, while denying them the right to do so. As we explain, this claim is unsupported by any evidence in the record, and belied by the City's evidence. Defendants also claim the 2004 ordinance violates their equal protection rights, is an invalid prior restraint, and violates their free speech rights under the California Constitution. (Cal. Const., art. 1, § 2, subd. (a).) We find no constitutional violation or other error, and affirm the order granting the preliminary injunction.

---

[1] There are five additional defendants and appellants: Alex Garcia, Sid's Carpet Barn, Inc., Curlan, Ltd., Rockefellas, and Pala Casino Resort and Spa. Their connection to AMG is described *post*.

## II.  BACKGROUND

A.  *The 2004 Ordinance and Other Applicable Law*

On September 1, the City adopted the 2004 ordinance, which amended the Corona Municipal Code (CMC)[2] to prohibit all new off-site billboards, or "outdoor advertising signs," anywhere in the City, except as permitted pursuant to a "relocation agreement" between the City and "a billboard and/or property owner."  Section 17.74.160 of the CMC states:  "Except as provided in § 17.74.070(H), outdoor advertising signs (billboards) are prohibited in the City of Corona.  The city shall comply with all provisions of the California Business & Professions Code regarding amortization and removal of existing off-premise[s] outdoor advertising displays and billboard signs."[3]

The 2004 ordinance allows off-site billboards erected in the City before the 2004 ordinance went into effect, that is, a "grandfathered" billboard, to be relocated in the City pursuant to a relocation agreement with the City.  Section 17.74.070H. of the CMC states, in part:  "[C]onsistent with the California Business & Professions Code Outdoor Advertising provisions, new off-premises advertising displays may be considered and

---

[2]  In issuing the preliminary injunction, the trial court took judicial notice of various CMC provisions, including those cited in this opinion.

[3]  The 2004 ordinance does not apply to on-site billboards, that is, billboards advertising a business, commodity, or service conducted, sold or offered on the premises where the billboard is located or to which it is affixed.  (CMC, § 17.74.030.)  "Off-site billboards display messages directing attention to a business or product not located on the same premises as the sign itself.  [Citation.]  For example, a billboard promoting the latest blockbuster movie, but attached to a furniture store, is an off-site sign.  The same billboard, when attached to a theater playing the movie, is an on-site sign."  (*World Wide Rush, LLC v. City of Los Angeles* (9th Cir. 2010) 606 F.3d 676, 682.)

3

constructed as part of a relocation agreement entered into between the City . . . and a billboard and/or property owner where one or more nonconforming billboards owned by the billboard and/or property owner . . . are removed. Such agreements may be approved by the City Council upon terms that are agreeable to the City . . . in [its] sole and absolute discretion."

The exception to the 2004 ordinance, which allows "grandfathered" billboards to be relocated pursuant to a relocation agreement with the City, is consistent with section 5412 of the Outdoor Advertising Act (the OAA). (Bus. & Prof. Code, § 5200 et seq.) It provides: [N]o advertising display which was lawfully erected anywhere within this state shall be compelled to be removed, nor shall its customary maintenance or use be limited . . . without payment of compensation, as defined in the Eminent Domain Law . . . . [¶] . . . [¶] It is a policy of this state to encourage local entities and display owners to enter into relocation agreements which allow local entities to continue development in a planned manner without expenditure of public funds while allowing the continued maintenance of private investment and a medium of public communication. Cities, counties, cities and counties, and all other local entities are specially empowered to enter into relocation agreements on whatever terms are agreeable to the display owner and the city, county, city and county, or other local entity, and to adopt ordinance or resolutions providing for relocation of displays." (Bus. & Prof. Code, § 5412.)

The CMC also prohibits any billboard to be erected in the City without a building permit. Section 15.02.070 of the CMC provides: "No person, firm or corporation shall

4

erect, re-erect, construct, enlarge, alter, repair, move, improve, remove, convert or demolish any building or other structure in the city, without obtaining a valid building permit prior to commencement of any work."

It is unlawful for any person to violate any provision or to fail to comply with the CMC, and any condition caused or permitted to exist in violation of the CMC is deemed a public nuisance. (CMC, § 1.08.020.) The City may seek to abate any such public nuisance in a civil action. (CMC, §§ 1.08.020, 8.32.210.)

B. *Factual Background*

AMG owns and operates off-site billboards in Southern California. In November 2014, an AMG agent, Jeanelle Heaston, went to the City planning department and asked for an application for a permit to erect an off-site billboard at 3035 Palisades, just south of State Route 91 in the City. A planning technician refused to provide Ms. Heaston with a permit application, explaining that billboards were not allowed in the City and all billboards then under construction in the City were being built pursuant to a relocation agreement with the City.

Over the weekend of December 6 and 7, 2014, AMG erected a monopole V-shaped billboard with two 14-foot by 48-foot static displays on the property at 3035 Palisades, just south of State Route 91 between Green River Road and Serfas Club Drive. Curlan, Ltd. owns the property on which the billboard was erected and leases the property to Sid's Carpet Barn. An advertisement for Rockefellas, a bar located in Corona and owned by Alex Garcia, the owner of AMG, was placed on one side of the billboard, and

5

an advertisement for Pala Casino Resort and Spa, located near Fallbrook, was placed on the other side.

AMG did not have a City permit (CMC, § 15.02.070) or a permit from the California Department of Transportation (Caltrans) (Bus. & Prof. Code, § 5350) to erect the billboard. AMG could not have received a building permit from the City to erect the billboard, because it could not have shown that the billboard was traceable to a billboard erected in the City before the 2004 ordinance went into effect. (CMC, § 17.74.160.) AMG could not have received a permit from Caltrans because the City had not approved the location of the billboard. (Bus. & Prof. Code, § 5354.)

On December 10 and 19, 2014, the City sent cease and desist letters to defendants and their counsel, advising them that the billboard violated the CMC and demanding its prompt removal. On December 23, counsel for AMG advised the City by letter that the 2004 ordinance banning all off-site billboards violated AMG's free speech rights, and was also unconstitutional as applied because the City was allowing another billboard operator, Lamar, to erect multiple billboards in the City despite the 2004 ban. AMG advised the City that it was "prepared to construct multiple" billboards in the City unless AMG and the City reached an agreement. Also on December 23, AMG submitted an application to the City to erect the billboard.

On December 30, 2014, the City filed a verified complaint against defendants seeking temporary, preliminary, and permanent injunctive relief, and other remedies, based on defendants' unauthorized erection and use of the billboard. On January 16,

6

defendants answered the complaint, and AMG and Rockefellas cross-complained against the City for declaratory relief, an injunction prohibiting the City from enforcing the 2004 ordinance, and a writ of mandate ordering the City to issue a building permit for the billboard.

On January 7, 2015, the trial court issued a temporary restraining order directing defendants to stop using the billboard and remove the advertising on it, but not requiring the removal of the billboard.[4]  Following a January 23 hearing, the trial court issued a preliminary injunction (1) prohibiting defendants from operating, allowing, using, and advertising on the billboard, (2) ordering defendants to immediately remove the billboard, including the pole, panels, and entire structure, and (3) prohibiting defendants from erecting any additional billboards in the City without first obtaining all required permits.

In issuing the preliminary injunction, the court rejected defendants' claim that the City was violating defendants' equal protection rights by allowing Lamar to erect new billboards in the City in violation of the 2004 ordinance.  The court found that "each Lamar sign is traceable back to a grandfathered billboard, which predate[s] the 2004 ban."  The court also found that the City's relocation agreements with Lamar properly allowed Lamar to relocate only "grandfathered" billboards, and Lamar was therefore in a

---

[4]  On January 26, 2015, in case No. E062662, this court summarily denied defendants' January 9, 2015, petition for an immediate stay and writ of mandate directing the trial court to set aside the temporary restraining order.

7

different position than defendants, who did not own, and were not seeking to relocate, a grandfathered billboard.  Defendants appealed.[5]

### III.  DISCUSSION

A.  *Standard of Review*

"The general purpose of a preliminary injunction is to preserve the status quo pending a determination on the merits of the action.  [Citation.]  '"The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy.  It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or . . . should not be restrained from exercising the right claimed by him."'  [Citation.]"  (*SB Liberty, LLC v. Isla Verde Assn., Inc.* (2013) 217 Cal.App.4th 272, 280.)

The trial court weighs two interrelated factors in determining whether to issue a preliminary injunction:  "[T]he likelihood the moving party ultimately will prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction."  (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999.)  Generally, the trial court's ruling on an application for a preliminary injunction rests in its sound

---

**5** On April 28, 2015, while this appeal was pending, AMG and California Outdoor Equity Partners (COEP) sued the City in the United States District Court for the Central District of California, case No. CV 15-03172 MMM (AGRx), seeking the same relief AMG and Rockefellas seek by their cross-complaint in this action.  On May 27, 2015, the district court denied AMG and COEP's ex parte application for a temporary restraining order, prohibiting the City from enforcing the 2004 ordinance prohibiting all new off-site billboards in the City, except grandfathered billboards relocated pursuant to a relocation agreement with the City, on the ground the plaintiffs did not show they were likely to succeed on the merits of their claims.

8

discretion and will not be disturbed on appeal absent an abuse of discretion. (*Ibid.*; *SB Liberty, LLC v. Isla Verde Assn., Inc.*, *supra*, 217 Cal.App.4th at pp. 280-281.) On appeal, the party challenging the preliminary injunction has the burden of demonstrating it was improperly granted. (*Costa Mesa City Employees Assn. v. City of Costa Mesa* (2012) 209 Cal.App.4th 298, 306.)

In reviewing an order granting a preliminary injunction, we do not reweigh conflicting evidence or assess witness credibility, we defer to the trial court's factual findings if substantial evidence supports them, and we view the evidence in the light most favorable to the court's ruling. (*People ex rel. Herrera v. Stender* (2012) 212 Cal.App.4th 614, 630.) To the extent the plaintiff's likelihood of prevailing on the merits turns on legal rather than factual questions, however, our review is de novo. (*Costa Mesa City Employees Assn. v. City of Costa Mesa*, *supra*, 209 Cal.App.4th at p. 306.)

When, as here, the preliminary injunction mandates an affirmative act that changes the status quo, it is scrutinized even more closely on appeal: "'"'The judicial resistance to injunctive relief increases when the attempt is made to compel the doing of affirmative acts. A preliminary mandatory injunction is rarely granted, and is subject to stricter review on appeal.'" [Citation.] The granting of a mandatory injunction pending trial "'is not permitted except in extreme cases where the right thereto is clearly established.'" [Citations.]' [Citation.]" (*People ex rel. Herrera v. Stender*, *supra*, 212 Cal.App.4th at p. 630.)

On the other hand, a more deferential standard of review applies when the government is seeking to enjoin the violation of an ordinance: "Where a governmental entity seeking to enjoin the alleged violation of an ordinance which specifically provides for injunctive relief establishes that it is reasonably probable it will prevail on the merits, a rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the defendant. If the defendant shows that it would suffer grave or irreparable harm from the issuance of the preliminary injunction, the court must then examine the relative actual harms to the parties." (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69-73, fn. omitted; see also *City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1166.) Here, we find no abuse of discretion and uphold the order granting the preliminary injunction.

B. *The City's Relocation Agreements With Lamar Do Not Unlawfully Discriminate Against Defendants, Because the City Has Not Allowed Lamar to Erect Any Off-site Billboards Other Than Grandfathered Billboards (CMC, § 17.74.070H.)*

The crux of defendants' claim, in the trial court and in this appeal, is that the City is applying the 2004 ordinance against them in an unlawfully discriminatory manner. Defendants claim the City has entered into relocation agreements with Lamar that have allowed Lamar to erect *new* billboards in the City, after the 2004 ordinance went into effect, which are not grandfathered billboards because they were not erected in the City before September 1, 2004. (CMC, § 17.74.070H.)

10

This claim fails because it is contrary to the facts. As the trial court found, and as the City demonstrated with substantial, uncontradicted evidence, *all of the off-site billboards* currently in the City, consisting of nine owned by Lamar and two owned by another billboard operator, General Outdoor Advertising, are grandfathered billboards in that they were either in their current location before the 2004 ordinance went into effect, or they are traceable to pre-September 1, 2004, grandfathered billboards.

### 1. Additional Background

In support of its application for the temporary restraining order and preliminary injunction, the City adduced original and supplemental declarations of its community development director, Joanne Coletta. Ms. Coletta had served as the City's community development director since 2008 and had worked in the community development department for 20 years.

According to Ms. Coletta, the City had not allowed any new billboards to be erected since September 1, 2004, when the 2004 ordinance went into effect, except in connection with an approved relocation agreement. Likewise, no permits to construct new billboards had been issued except in connection with an approved relocation agreement. A relocation agreement was required when any billboard had to be moved, such as when a freeway was being widened. As of January 2015, several billboards had either been relocated, or were in the process of being relocated, in connection with Caltrans's widening of State Route 91 through the City.

11

Lamar had nine billboards in the City, and each was either a "grandfathered" billboard that was in place before the 2004 ordinance went into effect, or was traceable to a grandfathered billboard. For example, the Lamar billboard on Delilah Street had been relocated from East Third Street due to the State Route 91 widening project, pursuant to a relocation agreement. The billboard was originally erected along Interstate 15 at Magnolia Avenue, before the 2004 ordinance went into effect, and was relocated to Third Street pursuant to an original relocation agreement. Due to the State Route 91 widening project, the board had to be relocated again.

Lamar purchased one of its nine billboards from Empire Outdoor Advertising, and assumed Empire Outdoor Advertising's relocation agreement with the City. Some of Lamar's billboards also had been "converted from static [to] digital" pursuant to an approved relocation agreement.[6] None of Lamar's grandfathered billboards had been relocated without an approved relocation agreement.[7]

Another billboard operator, General Outdoor Advertising, had two double-sided billboards in the City, bringing the total number of off-site billboards in the City to 11. General Outdoor Advertising had a relocation agreement with the City that allowed it to

---

[6] Since 2006, when the City adopted Ordinance No. 2864, the City also required a relocation agreement to replace a static billboard face with an electronic message center, electronic message board, or changeable message board.

[7] After September 2004, Lamar surrendered three grandfathered billboards to the City. Thus, despite purchasing one grandfathered billboard from Empire Outdoor Advertising, Lamar had fewer billboards in the City than it had when the 2004 ordinance went into effect.

change its two double-sided billboards from static to "changeable message board" in the same locations, and the City and General Outdoor Advertising were in the process of negotiating a relocation agreement for both billboards. The 11 grandfathered off-site billboards in the City were the only off-site billboards in the City.[8]

Pursuant to its relocation agreements with Lamar and General Outdoor Advertising, the City was entitled to place public service announcements on the digital billboards, or waive that right and receive the greater of a guaranteed minimum amount of revenue from each billboard face, or a percentage of the actual amount of revenue from each billboard face. "The vast majority of the time, the City receive[d] the guaranteed minimum. Occasionally, the percentage ha[d] exceeded the minimum, but never by a substantial amount."

2. Analysis

In support of their unlawful discrimination claim, defendants principally rely on *Summit Media LLC v. City of Los Angeles* (2012) 211 Cal.App.4th 921. There, the City of Los Angeles entered into settlement agreements with certain billboard operators, allowing the operators to digitize their existing billboards despite a municipal ordinance banning "'alterations or enlargements of legally existing off-site signs.'" (*Id.* at p. 924.) The settlement agreements thus permitted the city and the settling billboard operators to

_____

[8] On December 30, 2014, Ms. Coletta issued a written denial of AMG's December 23 application for a building permit for its billboard. The CMC provided for an administrative appeal hearing before a neutral hearing officer in the event a permit application was denied. (CMC, §§ 15.02.195, 1.09.010 et seq.) AMG did not appeal the City's denial of its permit application.

"circumvent the general ban in the municipal code on alterations to existing offsite signs." (*Id*. at p. 934.) The agreements were therefore void, or ultra vires, because the city acted beyond its authority in entering into them.

Here, in contrast to the ultra vires and void settlement agreement in *Summit Media*, the City has banned all new off-site billboards since 2004, and CMC section 17.74.070H. allows billboards in place before the 2004 ban to be relocated to other areas in the City pursuant to a relocation agreement with the City. When the owner of a preban or grandfathered billboard either wants to move it or has to move it because it will be condemned by eminent domain, both OAA and the CMC authorize the City to negotiate the terms of the relocation. (Bus. & Prof. Code, § 5412; CMC, § 17.74.070H.)

Contrary to defendants' claim, the City's relocation agreements with Lamar do not circumvent the 2004 ordinance ban on *new* off-site billboards. To the contrary, the relocation agreements merely provide for orderly relocation, in the City, of grandfathered off-site billboards—those erected in the City before the 2004 ordinance went into effect. Thus, defendants' assertion that the City has unfettered discretion to approve or deny *new billboard applications*, and unlawfully discriminate among new billboard applicants, is unsupported by any evidence in the record.

*Valley Outdoor, Inc. v. City of Riverside* (9th Cir. 2006) 446 F.3d 948 is also distinguishable. The problem in *Valley Outdoor*, as the court put it, was that "the City assert[ed] unbridled discretion under its municipal code to decide which late-filed applicants get to erect billboards and which do not." (*Id*. at p. 954.) Here, the City had

14

no authority to discriminate and did not in fact discriminate among any new off-site billboard applicants. The 2004 ordinance banned all *new* off-site billboards, and the record shows the City has uniformly enforced that ban. Since the 2004 ordinance went into effect, the City has only allowed off-site billboards to be erected in the City *if* the billboard was erected in the City before the 2004 ordinance went into effect, or the billboard was traceable to such a grandfathered billboard. (CMC, § 17.74.070H.)

C. *Equal Protection*

Defendants claim the City's relocation agreements with Lamar violate their equal protection rights. Not so. A substantially similar claim was squarely rejected in *Maldonado v. Morales* (9th Cir. 2009) 556 F.3d 1037, 1048, where the court found that the grandfathering clause of the OAA, exempting its application to billboards in place before November 7, 1967, did not violate the equal protection rights of new off-site billboard operators, because "banning new offsite billboards but allowing legal non-conforming billboards to remain 'furthers the State's significant interest in reducing blight and increasing traffic safety,' even if all billboards are not eliminated." And, unlike Lamar and General Outdoor Advertising, defendants do not own any billboards erected in the City before the 2004 ordinance went into effect. Thus, defendants are not similarly situated with Lamar or General Outdoor Advertising for equal protection purposes. (*Ibid.*)

15

D.  The *2004 Ordinance and Preliminary Injunction Are Not Invalid Prior Restraints*

Defendants claim the 2004 ordinance and the preliminary injunction amount to unconstitutional prior restraints on their free speech rights.  Not so.  Content-neutral injunctions which do not bar all avenues of expression are not treated as prior restraints. (*Madsen v. Women's Health Center, Inc.* (1994) 512 U.S. 753, 763, fn. 2.)  An injunction is content-neutral if its challenged provisions "burden no more speech than necessary to serve a significant government interest."  (*Id.* at p. 765.)

The 2004 ordinance bans all new off-site billboards, and the preliminary injunction requires defendants to cease operating and remove their new off-site billboard. Neither burdens more speech than necessary to accomplish the City's interest in increased traffic safety and aesthetics (*Maldonado v. Morales*, *supra*, 556 F.3d at pp. 1046-1048) and defendants may avail themselves of other forms of communication (*G.K. Ltd. Travel v. City of Lake Oswego* (9th Cir. 2006) 436 F.3d 1064, 1074).

The 2004 ordinance is also not a prior restraint because it does not afford the City unbridled discretion.  Under the prior restraint doctrine, "'a law cannot condition the free exercise of First Amendment rights on the "unbridled discretion" of government officials.'"  (*Desert Outdoor Advertising v. City of Moreno Valley* (9th Cir. 1996) 103 F.3d 814, 818.)  "'Unbridled discretion challenges typically arise when discretion is delegated to an administrator, police officer, or other executive official,' as opposed to a legislative body."  (*World Wide Rush, LLC v. City of Los Angeles*, *supra*, 606 F.3d at p. 688.)  That is not the case here.  Instead, the 2004 ordinance allowed the city council, in

16

the exercise of its legislative authority to regulate land use, to approve relocation agreements for grandfathered off-site billboards. (CMC, §§ 17.74.160, 17.74.070H.) As such, the 2004 ordinance is not an invalid prior restraint on free speech. (*World Wide Rush, LLC v. City of Los Angeles*, *supra*, at p. 688 [city council's exercise of its legislative authority to regulate land use does not implicate the First Amendment].)

*E. The 2004 Ordinance is Not Facially Invalid Under the California Constitution*

Defendants claim the 2004 ordinance is facially invalid under the free speech clause of the California Constitution. Not so. First, it is settled that a governing entity's ban on all new off-site commercial billboards does not violate the First Amendment. In *Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490, 510-513 (*Metromedia*), a plurality of the high court concluded that a City of San Diego ordinance did not violate the First Amendment, to the extent it banned all off-site commercial billboards. Specifically, the plurality concluded that the city ordinance banning all off-site commercial billboards satisfied the four-prong, intermediate scrutiny test established in *Central Hudson Gas & Elec. v. Public Serv. Comm'n* (1980) 447 U.S. 557, 562-566 for determining whether a governmental restriction on commercial speech violates the First Amendment.

*Central Hudson* held: "The Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. [Citation.] The protection available for a particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." (*Central Hudson*

17

*Gas & Elec. v. Public Serv. Comm'n*, *supra*, 447 U.S. at pp. 562-563.) *Central Hudson* adopted a four-part test for determining the validity of governmental restrictions on commercial speech: (1) "whether the expression is protected by the First Amendment," if so, (2) "whether the asserted governmental interest is substantial," if so, (3) "whether the regulation directly advances the governmental interest asserted," and (4) "whether [the regulation] is not more extensive than is necessary to serve that interest." (*Id*. at pp. 563, 566.) The *Metromedia* plurality specifically held that the City of San Diego ordinance was constitutional to the extent it banned all off-site commercial billboards, but unconstitutional to the extent it generally banned billboards with noncommercial content, while allowing on-site billboards carrying commercial content, thus afforded greater protection to commercial speech than to noncommercial speech.[9] (*Metromedia*, *supra*, 453 U.S. at pp. 513-514.)

*Metromedia* remains the law of the land. (See, e.g., *Outdoor Systems, Inc. v. City of Mesa* (9th Cir. 1993) 997 F.2d 604, 610-611["*Metromedia* remains the leading decision in the field, holding that a city, consistent with the *Central Hudson* test, may ban

_____

[9] The *Metromedia* plurality remanded the matter to the California Supreme Court to determine whether the unconstitutional portions of the ordinance could be severed from the constitutionally permissible portions. (*Metromedia*, *supra*, 453 U.S. at p. 521 & fn. 26.) On remand, our state Supreme Court refused to sever the unconstitutional portions of the ordinance from its constitutionally permissible portions, because that would "leave the city with an ordinance . . . less effective in achieving the city's goals, and one which would invite constitutional difficulties in distinguishing between commercial and noncommercial signs." (*Metromedia, Inc. v. City of San Diego* (1982) 32 Cal.3d 180, 191.) Here, in contrast, the 2004 ordinance is content neutral: it bans all off-site billboards, regardless of their commercial or noncommercial content.

all offsite commercial signs, even if the city simultaneously allows onsite commercial signs."]; *Clear Channel Outdoor, Inc. v. City of Los Angeles* (9th Cir. 2003) 340 F.3d 810, 813 ["The Supreme Court, the Ninth Circuit, and many other courts have held that the on-site/off-site distinction is not an impermissible content-based regulation."]; *Tahoe Regional Planning Agency v. King* (1991) 233 Cal.App.3d 1365, 1405 ["*Metromedia* . . . establishes that a governing entity 'may permit onsite signs while restricting offsite signs. The only restrictions are that noncommercial messages must be permitted in locations where commercial messages are permitted, and the local entity cannot regulate what type of noncommercial message . . . is permissible . . . .'"]; *City and County of San Francisco v. Eller Outdoor Advertising* (1987) 192 Cal.App.3d 643, 658-665.)

Notwithstanding *Metromedia*, defendants claim that the City's 2004 ban on all new off-site commercial billboards violates the free speech clause of the California Constitution, which states: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." (Cal. Const., art. I, § 2, subd. (a).)

Defendants argue that "[t]he State Constitution has always protected commercial speech[,] and state free speech jurisprudence does not recognize the federal 'commercial speech/noncommercial speech' dichotomy with its limited protection for commercial speech . . . ." In support of their state constitutional claim, defendants rely solely on *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468 (*Gerawan I*) where the court concluded that a marketing program and order issued by the California Secretary of Food

19

and Agriculture, namely, the California Plum Marketing Program and Marketing Order No. 917, compelling California plum producers, including Gerawan, to fund generic advertising for California-produced plums, "implicate[d]" Gerawan's free speech rights under article I, section 2 of the California Constitution. (*Gerawan I*, *supra*, at pp. 509-515.) In making this determination, the court observed that, as a general rule, "article I's free speech clause and its right to freedom of speech are not only as broad and as great as the First Amendment's, they are even 'broader' and 'greater.' [Citations.]" (*Id*. at p. 491.) Defendants' state constitutional claim rests solely on this general proposition.

*Gerawan I did not hold* that the marketing program violated Gerawan's free speech rights under the California Constitution; it left that issue for the Court of Appeal to determine on remand, and directed the Court of Appeal to decide the proper test to be employed in determining whether the marketing program violated Gerawan's free speech rights under the state Constitution. (*Gerawan I*, *supra*, 24 Cal.4th at pp. 515-517.) On remand, the Court of Appeal concluded that the marketing program violated Gerawan's free speech rights under the state Constitution because the generic advertising it required Gerawan and other plum growers to finance did not advance a valid government interest. (*Gerawan Farming, Inc. v. Kawamura* (2004) 33 Cal.4th 1, 10 (*Gerawan II*).) The Court of Appeal found it unnecessary to determine "precisely which legal standard to employ" in determining whether the marketing order violated the state Constitution. (*Ibid.*)

The case returned to the state Supreme Court in *Gerawan II*. There, the court concluded, in light of intervening Untied Stated Supreme Court precedent, that it would

20

be inappropriate to subject the marketing program "to only minimal scrutiny," and determined that the *Central Hudson* test was the proper test to apply in determining whether the marketing program violated Gerawan's free speech rights under the state Constitution. (*Gerawan II*, *supra*, 33 Cal.4th at pp. 20-24.) Applying that test, the court concluded the matter could not be resolved on the pleadings and had to be remanded to the trial court "for further factfinding" to determine whether the marketing program satisfied the four-prong *Central Hudson* test. (*Id*. at p. 24.)

Again, based on the "broader" and "greater" free speech protections afforded by article I of the California Constitution noted in *Gerawan I*, defendants maintain that "a city may not discriminate against lawful commercial speech, or between different types of lawful commercial speech simply because it is commercial." As noted, however, under *Metromedia* a governing entity may, consistent with the *Central Hudson* test, allow or discriminate in favor of *on-site* commercial signs, while banning or discriminating against *off-site* commercial signs, without violating the free speech clause of the First Amendment. (*Metromedia*, *supra*, 453 U.S. at pp. 507-512.) In light of *Gerawan II*, the analysis and result are the same under the California Constitution.

Lastly, defendants claim that the City's ban on all new off-site billboards "is exactly the same ban already found unconstitutional" in *Metromedia*.[10] Not so. As

---

**10** In *Metromedia*, the court remanded the matter to the California Supreme Court to determine whether the facially invalid portion of the ordinance, generally banning billboards carrying noncommercial advertising, could be severed from the constitutional portion banning all new off-site commercial billboards. (*Metromedia*, *supra*, 453 U.S. at p. 521 & fn. 26.) On remand, in *Metromedia, Inc. v. City of San Diego*, *supra*, 32 Cal.3d

*[footnote continued on next page]*

21

noted, the 2004 ordinance prohibits *all* new off-site billboards, regardless of their content (CMC, §§ 17.74.160, 17.74.070H.) and thus does not treat noncommercial speech less favorably than commercial speech—the element of the City of San Diego ordinance found facially invalid in *Metromedia* on First Amendment grounds. (*Metromedia*, *supra*, 453 U.S. at p. 513; see also *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 959 ["This court has never suggested that the state and federal Constitutions impose *different boundaries* between the categories of commercial and noncommercial speech."]; *Vanguard Outdoor, LLC v. City of Los Angeles* (9th Cir. 2011) 648 F.3d 737, 739, 746-747 ["claim that the California Constitution affords greater protection than the First Amendment fails in light of California Supreme Court case law."].)

## IV. DISPOSITION

The January 25, 2013, order granting the preliminary injunction is affirmed. The City shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278.)


KING_____
                                    J.


We concur:

McKINSTER_____

---

*[footnote continued from previous page]*
at pages 187 and 190, the court concluded that the unconstitutional portion of the ordinance could not be severed from the constitutional portion. (*Ibid.*)

22

Acting P. J.

MILLER
                                    J.

**CERTIFIED FOR PUBLICATION**

**COURT OF APPEAL -- STATE OF CALIFORNIA**

**FOURTH DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| CITY OF CORONA, | E062869 |
| Plaintiff and Respondent, | (Super.Ct.No. RIC1412756) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION AND MODIFYING OPINION |
| AMG OUTDOOR ADVERTISING, INC. et al., | |
| Defendants and Appellants. | [NO CHANGE IN JUDGMENT] |

THE COURT

A request having been made to this court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion heretofore filed in the above entitled matter on January 7, 2016, and it appearing that the opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c),

IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).

IT IS FURTHER ORDERED that the opinion filed in this matter on January 7, 2016, is modified as follows:

1. On pages 1 and 23, the words NOT TO BE PUBLISHED IN OFFICIAL REPORTS are replaced with the words CERTIFIED FOR PUBLICATION.

2. On page 3, second paragraph, the word "any" should be added before the word "off-site" and the word "billboards" should be changed to "billboard."

1

3. On page 6, the fourth sentence of the first full paragraph, the word "grandfathered" should be inserted after the words "traceable to a."

4. On page 14, the first sentence of the first full paragraph, the word "agreement" should be deleted and the word "agreements" inserted in its place.

5. On page 14, the sixth sentence of the first full paragraph, the word "the" should be inserted after the word "both."

6. On page 18, the 14th sentence, the word "and" should be inserted before the word "thus."

7. On page 18, footnote 18, the fourth sentence, the word "refused" should be deleted and the word "declined" inserted in its place.

8. On page 21, the third sentence on the page, the word "thus" should be inserted after the word "Appeal."

9. On page 21, the first sentence of the second full paragraph, the word "Again," should be deleted.

10. On page 22, the first sentence of the first full paragraph, the word "claim" should be deleted and the word "argue" inserted in its place.

11. On page 22, footnote 10 should be deleted in its entirety.

Except for these modifications, the opinion remains unchanged. This modification does not affect a change in the judgment.

CERTIFIED FOR PUBLICATION

KING_____
                                                    J.

We concur:

McKINSTER_____
                    Acting P.J.

MILLER_____
                            J.

2