Filed 2/8/24  Wu v. Crestview Dr Laguna Beach CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| NA WU et al., | |
| Plaintiffs and Respondents, | G062041 |
| v. | (Super. Ct. No. 30-2022-01243056) |
| CRESTVIEW DR LAGUNA BEACH, LLC, et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Nick A. Dourbetas, Judge.  Affirmed in part and reversed in part.

McCormick, Barstow, Sheppard, Wayte & Carruth and Scott M. Reddie for Defendants and Appellants.

Zweiback, Fiset & Zalduendo, Rachel Fiset, Jeanine Zalduendo and William Odem for Plaintiffs and Respondents.

\*          \*          \*

Plaintiffs Na Wu, Yi Shang, Guowen Liu, and Xiofang Yi filed this action

alleging they were swindled out of more than $50 million and three parcels of real property worth over $12 million in a years-long fraudulent investment scheme. As to the parcels, plaintiffs claim the investment schemers forged the signatures of Wu, Shang, and Yi on quitclaim deeds, which allowed record title to be transferred to entities controlled by defendants Mohamed Shaaban and Doaa Fathallah.

Plaintiffs obtained a temporary restraining order (TRO) and were later granted a preliminary injunction covering two of the three properties: (1) real property commonly known as 2361 Crestview Drive, Laguna Beach, California 92651 (the Crestview property); and (2) real property commonly known as 77 Chianti, Irvine, California 92618 (the Chianti property). The preliminary injunction order prohibited Shaaban, Fathallah, defendant Crestview Dr Laguna Beach, LLC (Crestview LLC), and defendant 77 Chianti, LLC (Chianti LLC) "from transferring any ownership interest, including title thereto and any accompanying rights to use *(including leasing)*, possess, and/or occupy," in the Crestview or Chianti property.

Crestview LLC, Chianti LLC, and defendant 58 Berkshire Wood, LLC appeal from the preliminary injunction order.[1] Although the alleged fraudulent scheme is intricate, the issue on appeal is narrow and limited. Crestview LLC and Chianti LLC challenge only the order's prohibition on leasing the properties and argue the trial court abused its discretion in finding the balance of harms tilts in plaintiffs' favor.

On the Crestview property, we disagree. We conclude substantial evidence supports the court's determination of the balance of harms. But on the Chianti property, we agree with Chianti LLC that the record does not support a finding the balance of harm

---

[1]        Plaintiffs unsuccessfully sought a TRO—and ultimately did not seek a preliminary injunction—for the third property, 58 Berkshire Wood, Irvine, California 92618. Despite this fact, 58 Berkshire Wood, LLC, the record title owner of the third property, is listed as an appellant in the notice of appeal and opening brief.

tips in plaintiffs' favor. We therefore reverse the order as to the portion that prohibits leasing of the Chianti property. In all other respects, the order is affirmed.

## FACTS

Because of the narrow issue on appeal, we provide a basic outline of the alleged fraudulent scheme and recite facts relevant only to the disputed leasing prohibition.

I.      *The Alleged Fraudulent Scheme*

Plaintiffs' verified second amended complaint includes claims for quiet title of the Crestview and Chianti properties. The following summary of the alleged fraud is drawn from this complaint.

Plaintiffs are Chinese citizens. In 2017, Wu and her then-husband Shang bought the Crestview property. They split their time between China and the United States, using the Crestview property as their primary U.S. residence. Wu later married her business partner Liu, and the new couple continued to split their time between the two countries and live in the Crestview property while in the United States. Yi, who lives in China and is a friend of Wu and Liu, bought the Chianti property in 2017.

Plaintiffs contend they were defrauded by a group of conmen–defendants Remington Chase, Kevin Robl, Joseph Tang, and Daniel Petta–into investing with defendants Production Capital, LLC (Production Capital), operated by Robl, and Knightsbridge Entertainment, Inc. (Knightsbridge), operated by Chase. Tang worked for Chase and Robl. Tang spoke Mandarin and targeted Chinese investors, like plaintiffs, to put money into Chase's and Robl's various companies. Petta notarized forged deeds for these companies on properties owned by plaintiffs, including the Crestview and Chianti properties.

In late 2021, Wu and Liu learned about these fraudulent transfers when they returned from China and found themselves locked out of the Crestview property. In

3

February 2022, Wu and Liu, who were overseeing Yi's property, discovered the locks to the Chianti property had been changed.

II. *The Crestview Property*

Exhibits submitted by the parties show the title history of the Crestview property. In 2017, Liu sold the Crestview property to Wu and Shang. A 2018 quitclaim deed indicates Wu and Shang conveyed the property to Production Capital. Wu and Shang, however, contend their signatures were forged. Months later, Production Capital quitclaimed its interest to 2361 Crestview Dr Laguna Beach, LLC, an entity controlled by Robl.

In mid-2019, 2361 Crestview Dr Laguna Beach, LLC executed a grant deed conveying the Crestview property to Crestview LLC, an entity controlled by Shaaban. Shaaban and Fathallah, who are husband and wife, bought the Crestview property for $3.575 million and immediately rented it back to Production Capital for $20,000 a month. According to Shaaban, Robl wanted to use the money from the sale to fund Production Capital's business while continuing to host visiting business associates at the Crestview property.

On October 21, 2021, Production Capital terminated its lease and surrendered the Crestview property. Robl signed a document on behalf of Production Capital authorizing Shaaban and Fathallah to "remove or dispose of" its personal property left at the premises, which included furniture, household goods, two Bentleys, and a Tesla.

III. *The Chianti Property*

Exhibits submitted by the parties show a similar title history for the Chianti property. In 2017, Yi bought the Chianti property. A 2018 quitclaim deed shows Yi conveyed the Chianti property to Knightsbridge. Yi claims her signature was forged. Months later, Knightsbridge executed a grant deed conveying its interest to Production Capital.

4

In mid-2019, Production Capital executed a grant deed conveying the Chianti property to Chianti LLC, an entity controlled by Shaaban. Chianti LLC bought the Chianti property for $1.424 million and immediately rented it back to Production Capital for $10,000 a month.

On October 21, 2021, Production Capital terminated its lease and surrendered the Chianti property. Robl signed a document on behalf of Production Capital authorizing Chianti LLC to "remove or dispose of" its personal property left at the premises, which included furniture and household goods.

IV.    *The TRO, Preliminary Injunction Motion, and Leasing of the Chianti Property*

In February 2022, the trial court (Judge Slaughter) issued a TRO covering the Crestview and Chianti properties. The TRO enjoined defendants "from transferring title" of those properties, selling or advertising them for sale, and removing personal property left there.

The parties submitted briefs and evidence on the motion for preliminary injunction.[2] At the hearing on March 30, plaintiffs' counsel represented to the court (Judge Salter) that the TRO "has put everything at a status quo. So [plaintiffs] are not allowed to remove the property from the home, and [defendants] are not allowed to sell or transfer either home." When the court asked about plaintiffs' personal items in the homes, plaintiffs' counsel replied, "I feel like it's not the appropriate place to request that they be able to retrieve their property. This is an injunction hearing based on the T.R.O. that was issued last month. And so just simply based on the fact that this is an injunction hearing, we are requesting that the court issue a preliminary injunction in the same exact fashion it issued the T.R.O. last month." Ultimately, the court continued the hearing to permit the parties to "sort things out," conduct discovery, and potentially come to realize

_____

[2]        The notice of motion and memorandum of points and authorities, however, were not included in the appellate record.

5

their "interests are better served by working together to go after the individuals -- if in fact there was a fraud -- to go after those individuals and protect everybody's interest."

On May 25, Chianti LLC leased the Chianti property in exchange for tenants paying an entire year of rent up front, for a total of $90,000. An addendum to the lease disclosed this lawsuit against Chianti LLC, stated tenants received a copy of the TRO, advised that Chianti LLC could not "guarantee against or prevent plaintiffs . . . from taking further action against the Premises," and included an acknowledgement by tenants that their leasehold rights may be impacted by such actions.

V.    *The Updated Preliminary Injunction Motion and Resulting Order*

Before the continued hearing on July 20, the parties submitted updated briefs and later supplemental briefs. In addition to the prohibitions listed in the TRO, plaintiffs' updated notice of motion sought to enjoin "leasing" of the Crestview and Chianti properties.

The tentative ruling was to grant the motion "to the extent it seeks a preliminary injunction enjoining" Shaaban, Fathallah, Crestview LLC, and Chianti LLC, and their respective agents "from transferring any ownership interest, including title thereto and any accompanying rights to use, possess, and/or occupy," in the Crestview or Chianti property, and to deny it "to the extent it seeks a preliminary injunction enjoining the Shaaban defendants from removing plaintiffs' personal property" from the properties.

At the continued hearing, defense counsel argued: "But just one more time if we could beg the court, just so we don't have to come back again, we would request that the final language of the order track what was requested in the original notice of motion and in the TRO that precludes transfer of title and sale. And that's fine. I just don't want to come back here with someone claiming that this lease we already have turns us into a mandatory injunction, modifies it."

The court then asked plaintiffs' counsel if she had any issue with the continued leasing of the Chianti property. Plaintiffs' counsel responded, "We do, your

6

Honor.  We do not want there to be tenants in the property.  We do have an issue.  That is an absolute point of clarification that I think we were very clear in our notice of motion that we do not believe this property should be leased."

After taking the matter under submission, the trial court issued a minute order on September 30 confirming the tentative ruling, with two modifications.  First, the court granted the motion "to the extent it seeks a preliminary injunction enjoining" Shaaban, Fathallah, Crestview LLC, and Chianti LLC, and their respective agents "from transferring any ownership interest, including title thereto and any accompanying rights to use *(including leasing)*, possess, and/or occupy," in the Crestview or Chianti property.  The court did not specifically indicate whether the new parenthetical phrase "*(including leasing)*" (hereinafter, the leasing prohibition) would require Chianti LLC to remove the existing tenants from the Chianti property.  Second, the court set a bond of $200,000 to be paid by plaintiffs.  Plaintiffs posted the bond.  This appeal followed.

## DISCUSSION

### I.     *Standard of Review*

"Our review of a preliminary injunction 'may trigger any or all of the three standards of appellate review.'  [Citation.]  The trial court's evaluation and weighing of the parties' likelihood of success on the merits and the balance of harm is reviewed for abuse of discretion.  [Citation.]  We review de novo the trial court's application of legal principles and we review its findings of fact under the substantial evidence standard."  (*Anderson v. County of Santa Barbara* (2023) 94 Cal.App.5th 554, 568.)

Under the abuse of discretion standard, "[t]he trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction."  (*Butt v. State of California* (1992) 4 Cal.4th 668, 678.)  "'A trial court will be found to have abused its discretion only when it has "'exceeded the bounds of reason or contravened the uncontradicted evidence.'"'"  (*Ryland Mews Homeowners Assn. v.*

7

*Munoz* (2015) 234 Cal.App.4th 705, 711 (*Ryland*).) "If the trial court abused its discretion on either factor, we must reverse." (*Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 625.) "'Further, the burden rests with the party challenging the injunction to make a clear showing of an abuse of discretion.'" (*Ryland*, at p. 711.)

Under the substantial evidence standard, "'"we must interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order."'" (*Costa Mesa City Employees Assn. v. City of Costa Mesa* (2012) 209 Cal.App.4th 298, 306.) The appellant bears the "'daunting'" burden of "identify[ing] and establish[ing] deficiencies in the evidence." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.)

II.     *Prohibitory and Mandatory Injunctions*

An injunction can be mandatory, prohibitory, or both. (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265, fn. 4.) "Like many distinctions in the law, the distinction between a mandatory and a prohibitory injunction sometimes proves easier to state than to apply." (*Daly v. San Bernardino County Bd. of Supervisors* (2021) 11 Cal.5th 1030, 1041 (*Daly*).) A prohibitory injunction is one that "that requires no action and merely preserves the status quo." (*Id.* at p. 1035.) A mandatory injunction "requir[es] the defendant to take affirmative action." (*Ibid.*)

To determine whether an injunction preserves or upsets the status quo, we first must identify the status quo. "Should courts measure the status quo from the time the order is entered, . . . or instead from the '"last actual peaceable, uncontested status which preceded the pending controversy . . . ?"'" (*Daly*, *supra*, 11 Cal.5th at pp. 1045–1046.) On the one hand, "an injunction preventing the defendant from committing additional violations of the law may not be recharacterized as mandatory merely because it requires the defendant to abandon a course of repeated conduct as to which the defendant asserts a right of some sort. In such cases, the essentially prohibitory character of the order can be seen more clearly by measuring the status quo from the time before

8

the contested conduct began." (*Id.* at p. 1046.) On the other hand, if "the injunctive order aims not to prevent injury from future conduct but instead offers a remedy for a past violation," the order is mandatory to the extent it "calls for the performance of an affirmative act." (*Ibid.*)

"'""""A preliminary mandatory injunction is rarely granted, and is subject to stricter review on appeal."'" [Citation.] The granting of a mandatory injunction pending trial "'is not permitted except in extreme cases where the right thereto is clearly established.'" [Citations.]" [Citation.]'" (*City of Corona v. AMG Outdoor Advertising, Inc.* (2016) 244 Cal.App.4th 291, 299 (*Corona*).) Nonetheless, "'[t]he principles upon which mandatory and prohibitory injunctions are granted do not materially differ. The courts are perhaps more reluctant to interpose the mandatory writ, but in a proper case it is never denied.'" (*Ryland, supra,* 234 Cal.App.4th at p. 712, fn. 4.)

III.    *The Crestview Property*

On the Crestview property, we conclude the leasing prohibition is prohibitory and there was ample support in the record for the trial court's finding of harm tilting in favor of Wu and Liu.

The leasing prohibition was couched in prohibitory terms; it enjoined Crestview LLC from leasing the Crestview property. Here, the status quo is properly measured from the time the preliminary injunction order was granted on September 30, 2022. (*Daly*, *supra*, 11 Cal.5th at p. 1045.) There is no dispute that on that day Crestview LLC had not leased the Crestview property. Thus, to refrain from leasing the Crestview property, Crestview LLC did not have to do anything. (See *Daly*, *supra*, 11 Cal.5th at p. 1035 [prohibitory injunction "requires no action and merely preserves the status quo"].)

The interim harm factor "involves consideration of such things as the inadequacy of other remedies, the degree of irreparable harm, and the necessity of preserving the status quo." (*Abrams v. St. John's Hospital & Health Center* (1994) 25

9

Cal.App.4th 628, 636; see Code Civ. Proc., § 526, subd. (a).) Since 2017, the Crestview property has been Wu's primary residence in the United States, and since 2019 it has been Liu's primary residence when they married. They spend about six months a year there. If the Crestview property were to be leased, Wu and Liu would suffer harm in having strangers live in their primary U.S. residence, which contains their personal belongings. Because the Crestview property is their home and not simply an investment property, money damages for such a harm would be inadequate or extremely difficult to calculate. (See Code Civ. Proc., § 526, subd. (a)(4) & (5).)

The Crestview property, however, is simply an investment for Crestview LLC. Before the issuance of the TRO, Shaaban had been making arrangements to sell the property. Crestview LLC is responsible for monthly mortgage payments of $17,000, which are easily calculable money damages. Crestview LLC has not argued on appeal or cited evidence in the record to show it is unable to carry these costs during the pendency of this action.

IV.    *The Chianti Property*

Unlike with the Crestview property, we conclude the leasing prohibition on the Chianti property is mandatory and thus subject to stricter scrutiny on appeal. We also determine the trial court's balancing of harms is not supported by the record and does not withstand this heightened scrutiny.

Although the leasing prohibition was couched in prohibitory terms (i.e. enjoining Chianti LLC from leasing), it was nonetheless mandatory in nature. Here, too, the status quo is properly measured from the time the preliminary injunction order was granted on September 30, 2022. (*Daly*, *supra*, 11 Cal.5th at p. 1045.) By that time, Chianti LLC had already entered a one-year lease of the Chianti property. Thus, to refrain from leasing the Chianti property, Chianti LLC would have had to evict or otherwise remove the current tenants from the premises. The leasing prohibition would not "prevent injury from future conduct" but instead serve to remedy a past act. (*Id.* at

10

p. 1046.) That affirmative step of removing a tenant would plainly alter the status quo. As such, the mandatory nature of the leasing prohibition is subject to heightened appellate scrutiny.

"""The granting of a mandatory injunction pending trial '"is not permitted except in extreme cases where the right thereto is clearly established."' [Citations.]" [Citation.]'" (*Corona*, *supra*, 244 Cal.App.4th at p. 299.) "To obtain a preliminary injunction, a plaintiff ordinarily is required to present evidence of the irreparable injury or interim harm that it will suffer if an injunction is not issued pending an adjudication of the merits." (*White v. Davis* (2003) 30 Cal.4th 528, 554.) Here, the record on appeal does not show the facts of this case were so extreme as to clearly establish the right to a mandatory injunction.

The trial court found the balance of harms favored the issuance of a preliminary injunction, citing *Glynn v. Marquette* (1984) 152 Cal.App.3d 277, 280, and *Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal.App.4th 1358, 1380. Those cases, however, merely stand for the proposition that "[s]pecific performance is given in land sale contracts because it is assumed every piece of property is unique and that the buyer's remedy by way of damages is inadequate. (Civ. Code, § 3387.)" (*Glynn*, at p. 280; *Fonteno*, at p. 1380 [same].) While the unique nature of real property supports the issuance of a preliminary injunction of that property's *transfer or sale*, the same rationale does not apply categorically to *leasing* the property, particularly when the property is an investment property versus a claimed owner's residence. The act of leasing real property, in and of itself, does not make the remedy of money damages inadequate to a party who claims ownership of the property.

According to Yi, the leasing of the Chianti property "to strangers would wreak obvious, grievous injury" to her "quiet enjoyment" of her property, and it "would work genuine prejudice" to her "psychological and legal interests in excluding others" from her property. Yi contends that "[n]o evidence or testimony is necessary to reach

11

this common-sense conclusion." But in support of the TRO and preliminary injunction, Yi declared she purchased the Chianti property as an investment and that, at least as of July 13, 2022 (the date of her last declaration), she had never been to the United States. Without having visited the Chianti property at all, it is difficult to imagine the psychological harm Yi would suffer if the property were to be rented.

Yi points out that Wu and Liu's personal possessions remain in the Chianti property. Tellingly, she does not declare her personal possessions remain there. Indeed, having never been to the United States, it is unlikely Yi has any personal belongings at the property. That Wu and Liu have stored belongings there does not tip the balance of harms in Yi's favor.

Yi also argues an injunction is an appropriate remedy for a continuing trespass. Yi did not bring a claim, however, for trespass. Instead, this case concerns two parties who claim rightful title to the Chianti property.

Yi asserts her case "presents a nearly identical fact pattern" to *Grey v. Webb* (1979) 97 Cal.App.3d 232 (*Grey*). We disagree. The plaintiff buyers in *Grey* were suing for specific performance of a contract to buy a newly constructed home. (*Id.* at p. 236.) The plaintiffs obtained "an ex parte order restraining defendants from conveying, occupying, or possessing" the home "and ordering them to show cause why a preliminary injunction to the same effect should not be issued." (*Id.* at p. 235.) Days later, a third party allegedly moved into the home. (*Ibid.*) The plaintiffs then obtained a preliminary injunction, which was upheld on appeal. (*Id.* at p. 236.) The appellate court reasoned, "Unlike the usual case, the property in question was not occupied by any of the defendants when the action was commenced and the request for preliminary injunction was made. In fact, the house had not been occupied at all because it had just been completed. By preventing occupation of a previously vacant house, the preliminary injunction had the effect of preserving, rather than disturbing, the status quo." (*Id.* at p. 237.) It further determined that, while it was a "close" case, there was substantial

12

evidence of irreparable injury, given that the "difference between a new house and a used one, as perceived by a buyer of ordinary sensitivity, is a difference of character and not merely of value." (*Id.* at p. 238.)

*Grey* is readily distinguishable from this case for two salient reasons. First, the *Grey* home was vacant when the TRO was issued. Thus, the preliminary injunction, which contained the same directives as the TRO, was prohibitory because it preserved the status quo–a new, vacant home–before issuance of the TRO. In contrast, the TRO here did not contain language preventing Chianti LLC from occupying, possessing, or leasing the Chianti property. When the leasing prohibition was ultimately added to the order granting preliminary injunction, the Chianti property was already under a lease contract, thereby making the leasing prohibition a mandatory injunction. Second, the *Grey* home was new and had never been occupied. The court thus reasoned the *Grey* plaintiffs would suffer irreparable harm in losing the ability to live in a brand new home. In this case, the Chianti property was an investment, there was no evidence it was a new home, and there was no assertion Yi had lived there or intended to do so in the future.

Finally, to the extent there is any concern the tenants would cause damage to the Chianti property or its contents, Yi has an adequate remedy at law: money damages. (See *Pacific Decision Sciences Corp. v. Superior Court* (2004) 121 Cal.App.4th 1100, 1110 ["before a court may issue a nonstatutory injunction as a provisional remedy for breach of contract, it must appear that monetary relief would not afford adequate relief or that it would be extremely difficult to ascertain the amount of damages"].)

For these reasons, we conclude the trial court abused its discretion by granting a mandatory preliminary injunction prohibiting leasing of the Chianti property, which had already been leased when the order was made.

13

## DISPOSITION

The order dated September 30, 2022, granting preliminary injunction is reversed in part, as follows: The phrase "and any accompanying rights to use *(including leasing)*, possess, and/or occupy" shall be stricken as to, and deemed not to apply to, the Chianti property.  In all other respects, the order is affirmed.  In the interests of justice, each side shall bear their own costs on appeal.


DELANEY, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.

14