Filed 3/14/16

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE ex rel. MICHAEL N. FEUER, as City Attorney, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> NESTDROP, LLC, et al., <br><br> Defendants and Appellants. | B262174 <br><br> (Los Angeles County <br> Super. Ct. No. BC565409) |

APPEAL from an order of the Superior Court of Los Angeles County, Robert H. O'Brien, Judge. (Retired Judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Law Offices of Michael D. Grahn, Michael D. Grahn, for Defendants and Appellants.

Michael N. Feuer, City Attorney, Asha Greenberg, Assistant City Attorney, and Anh Truong, Assistant Supervising Deputy City Attorney, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, all but part II.C of this opinion is certified for publication.

Defendants and appellants Michael Joseph Pycher (Pycher) and Roddy Radnia (Radnia) are founders of defendant and appellant Nestdrop, LLC, a company that developed a software application ("app") allowing a user to make arrangements for a driver to deliver marijuana products from one of certain medical marijuana businesses in the City of Los Angeles (City). Michael Feuer, as attorney for the City and on behalf of the People, filed a complaint charging defendants with causing, aiding, and abetting the illegal delivery of marijuana. The People sought a preliminary injunction barring defendants from further developing or marketing their marijuana delivery app, and the trial court issued the injunction. Defendants ask us to overturn it because the City failed to demonstrate a likelihood of success on the merits of its complaint. Defendants' argument for reversal turns on an interpretive question that we shall decide: does Proposition D, which City voters enacted in 2013 to regulate medical marijuana businesses, generally prohibit the delivery of marijuana by vehicles?

## I. BACKGROUND

### A. *State Statutes and Proposition D*

California law generally prohibits the cultivation, possession, use, and distribution of marijuana.[1] (Health & Saf. Code §§ 11357-11361, 11366, 11366.5, & 11570.) However, in 1996, California voters adopted the Compassionate Use Act (§ 11362.5), and in 2003, the Legislature enacted the Medical Marijuana Program. (Health & Saf. Code, §§ 11362.7-11362.83.)

"The Compassionate Use Act . . . ensures that Californians who obtain and use marijuana for specified medical purposes upon the recommendation of a physician are not subject to certain criminal sanctions." (*People v. Wright* (2006) 40 Cal.4th 81, 84;

---

[1]  Under federal law, marijuana remains a controlled substance, and its possession, distribution, and manufacture is generally prohibited. (21 U.S.C. § 801 et seq.; *City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 738-739 (*City of Riverside*).) To resolve the issue presented in this appeal, we need not and do not consider the interplay between state and federal marijuana laws, and thus, nothing we say in this opinion pertains to the applicability or enforcement of federal law.

2

see generally *People v. Mower* (2002) 28 Cal.4th 457.)  In the later-enacted Medical Marijuana Program statute, the Legislature addressed issues not addressed in the Compassionate Use Act and gave specified individuals—including a qualified patient or a designated primary caregiver—an affirmative defense to prosecution for transporting marijuana under specified conditions.  (Health & Saf. Code, § 11362.765; *People v. Wright*, *supra*, at p. 85.)  Neither act, however, eliminated the authority of local governments to regulate, or even ban, medical marijuana dispensaries within their respective jurisdictions.  (*City of Riverside*, *supra*, 56 Cal.4th at p. 738.)

In 2013, City voters approved just such a regulatory measure, Proposition D, which "(a) prohibits medical marijuana businesses, but (b) grants a limited immunity from the enforcement of its prohibition to those medical marijuana businesses that do not violate the restrictions set forth in [the] ordinance . . . ."  (L.A. Mun. Code,[2] § 45.19.6.)  Proposition D makes it "unlawful to own, establish, operate, use, or permit the establishment of a medical marijuana business, or to participate as an employee, contractor, agent or volunteer, or in any other manner or capacity in any medical marijuana business."  (§ 45.19.6.2, subsec. A.)  The prohibition extends to "renting, leasing, or otherwise permitting a medical marijuana business to occupy or use a location, vehicle, or other mode of transportation."  (§ 45.19.6.2, subsec. B.)

Proposition D employs a two-part definition of a "medical marijuana business."  Part one of that definition covers fixed locations, bringing within the ambit of the ordinance "[a]ny location where marijuana is cultivated, processed, distributed, delivered, or given away to a qualified patient, a person with an identification card, or a primary caregiver."  (§ 45.19.6.1, subsec. A.)  A "location" is further defined to mean "any parcel of land, whether vacant or occupied by a building, group of buildings, or accessory buildings, and includes the buildings, structures, yards, open spaces, lot width, and lot area."  (§ 45.19.6.1, subsec. A.)  Part two of the definition of a medical marijuana business covers vehicles, thereby making section 45.19.6.2, subsection A of the

---

[2]     Undesignated citations that follow are to the Los Angeles Municipal Code.

3

ordinance (the general prohibition provision we have already quoted) applicable to "[a]ny vehicle or other mode of transportation, stationary or mobile, which is used to transport, distribute, deliver, or give away marijuana to a qualified patient, a person with an identification card, or a primary caregiver."[3] (§ 45.19.6.1, subsec. A.) A "vehicle" is further defined to mean "a device by which any person or property may be propelled, moved, or drawn upon a street, sidewalk or waterway, including but not limited to a device moved exclusively by human power." (§ 45.19.6.1, subsec. A.)

Proposition D excludes from its definition of a medical marijuana business—and thus, from the ordinance's general ban on such businesses—a very narrow set of locations and vehicles under specified circumstances. These exclusions parallel provisions in the Medical Marijuana Program and other state statutes that provide a defense to prosecution for certain facilities and for certain activities involving medical marijuana. More specifically, Proposition D provides that a medical marijuana business shall not include any of the following: dwelling units where three or fewer qualified patients, persons with an identification card, and/or primary caregivers cultivate marijuana (compare Health & Saf. Code, §§ 11362.5 & 11362.7); any location during only that time reasonably required for a designated primary caregiver to provide marijuana to a qualified patient or person with an identification card (compare Health & Saf. Code, §§ 11362.5 & 11362.7); and locations of certain clinics and health facilities licensed under state law (compare, e.g., Health & Saf. Code, § 1200 et seq.). (§ 45.19.6.1, subsec. A.) Particularly relevant for our purposes, Proposition D also excludes from the medical marijuana business definition "vehicle[s] during only that time

---

[3]     A "qualified patient" is "a person who is entitled to the protections of [the Compassionate Use Act] but who does not have an identification card issued pursuant to [the Medical Marijuana Program]." (Health & Saf. Code, § 11362.7, subd. (f).) A "person with an identification card" is "an individual who is a qualified patient who has applied for and received a valid identification card pursuant to [the Medical Marijuana Program]." (Health & Saf. Code, § 11362.7, subd. (c).) A "primary caregiver" is "the individual, designated by a qualified patient or by a person with an identification card, who has consistently assumed responsibility for the housing, health, or safety of that patient or person . . . ." (Health & Saf. Code, § 11362.7, subd. (d).)

4

reasonably required for [their] use by: (i) a qualified patient or person with an identification card to transport marijuana for his or her personal medical use, or (ii) a primary caregiver to transport, distribute, deliver, or give away marijuana to a qualified patient or person with an identification card who has designated the individual as a primary caregiver, for the personal medical use of the qualified patient or person with an identification card, in accordance with [the Medical Marijuana Program]." (§ 45.19.6.1, subsec. A; compare Health & Saf. Code, § 11362.765.)

Although Proposition D bans all medical marijuana businesses, it does grant limited immunity from prosecution under Los Angeles Municipal Code sections 11.00 (code violations generally) and 12.27.1 (administrative nuisance abatement) to some establishments that are medical marijuana businesses as defined under the ordinance. As stated in section 45.19.6.3, this limited immunity extends "only [to] a medical marijuana business at the one location identified in its original or any amended business tax registration certificate issued by the City, and only if that medical marijuana business does not violate any of" the 15 conditions set forth in subsections A through O of that section.[4]

These subsections permit a medical marijuana business to assert the ordinance's limited immunity defense only if the business: was established as of September 14, 2007, and registered with the City Clerk by November 13, 2007 (subsections A and B); submits proof of continual "operation at the location set forth in its original or any amended business tax registration or tax exemption certificate" (subsection D); registered to pay and pays applicable taxes to the City (subsections E and F); refrains from "remain[ing] open and/or operating between the hours of 8 PM and 10 AM" (subsection G); forbids minors unaccompanied by a parent or guardian from "enter[ing] its premises," and forbids anyone from consuming marijuana or alcohol "at the premises or in any area of

_____

[4]      The ordinance also provides that the limited immunity it confers is available and may be asserted "only so long as each and every provision and clause of subsections A through D and G through O of this Section . . . remain valid, effective and operative." (§§ 45.19.6.3, 45.19.6.8.)

the location used for parking any vehicle" (subsections I and H); does not allow "ingress or egress to [the] premises on any side of the location" abutting or closely neighboring any land zoned residential (subsection L); is not situated "within a 1,000-foot radius of a school, or within a 600-foot radius of a public park, public library, religious institution, child care facility, youth center, alcoholism, drug abuse recovery or treatment facility, or other medical marijuana business . . . ." (subsection O); and satisfies additional specified conditions we find it unnecessary to mention here. (§ 45.19.6.3.) In effect, these prerequisites for asserting the ordinance's limited immunity defense capped the number of medical marijuana businesses entitled to operate in the City to approximately 135, rather than the estimated 1,600 businesses that operated prior to Proposition D's passage. (L.A. Ballot Pamp., Gen. Elec. (May 2013), Impartial Summary and Argument in Favor of Prop. D.)

### B.    Factual and Procedural History

Pycher, Radnia, and Adam Larson founded Nestdrop in 2013. Initially, the Nestdrop app allowed Los Angeles-area users to order alcohol for local delivery within the hour. In October or November of 2014, Nestdrop's developers expanded the app to allow deliveries of medical marijuana in parts of the City. To procure marijuana through the app, a user orders from a menu of products. The order is then placed with a medical marijuana business with which Nestdrop has partnered. According to defendants, an employee of the providing medical marijuana business or a "volunteer" then delivers the marijuana to the purchaser.

On December 2, 2014, the City, on behalf of the People, filed a complaint against Nestdrop and its founders alleging they violated Proposition D, specifically section 45.19.6.2 of the Los Angeles Municipal Code, by facilitating the delivery of medical marijuana.[5] The City contended Proposition D prohibits all medical marijuana businesses from delivering marijuana by vehicle because immunity is necessarily tied to a

---

[5]    The City dismissed Adam Larson as a defendant on December 5, 2014.

6

"location," meaning a "physical parcel of land" and "immunity cannot accompany the marijuana when it leaves the location to be delivered elsewhere." The City further argued defendants' delivery app would "unfairly detract from the quality of life of the areas where marijuana is delivered" and unjustly enrich defendants so as to constitute unfair competition prohibited by California Business and Professions Code section 17200 et seq. In its prayer for relief, the City sought preliminary and permanent injunctions, as well as civil monetary penalties.

The trial court held a hearing on December 23, 2014, to hear argument on whether it should issue a preliminary injunction. Defendants argued an injunction should not issue because the People were unlikely to prevail. Specifically, defendants maintained that Proposition D "ties the immunity to a medical marijuana business at the location, not to a location," meaning that once a business is entitled to immunity at its "location" (i.e., parcel of land), the scope of the immunity would permit the business to make vehicle deliveries from that location to other areas of the City. The trial court rejected defendants' argument and granted the People's request for a preliminary injunction; defendants did not ask the court to make specific findings or explain its rationale on the record. The injunction bars defendants from "develop[ing] or market[ing] any computer program or App, including Nestdrop, that facilitates in any way the delivery of marijuana in the City of Los Angeles; . . . solicit[ing] or perform[ing] any agreement with any vendor to deliver marijuana in the City of Los Angeles through an App or any other means; . . . [and] engag[ing] in any conduct that would facilitate, aid, or abet the delivery of marijuana in the City of Los Angeles."

## II. DISCUSSION

Defendants argue Proposition D permits medical marijuana dispensaries that are entitled to limited immunity under the ordinance to deliver marijuana to qualified patients by vehicle. If that interpretation is correct, defendants maintain the City has not shown a likelihood of success on the merits because the City did not proffer sufficient evidence to show defendants intended to facilitate deliveries of marijuana from what defendants

7

knew to be non-immune businesses.[6] The City counters that defendants misinterpret Proposition D, and that properly read, the ordinance prohibits any vehicle delivery of marijuana to patients (except by a designated primary caregiver). The City gets the better of the argument: Proposition D does prohibit virtually all deliveries of marijuana by vehicle, and the City has therefore shown it is likely to succeed in its suit against defendants on an aiding and abetting theory.[7]

### A.    *Standard of Review*

"'In deciding whether to issue a preliminary injunction, a trial court must evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his [or her] claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the injunction. [Citations.]' [Citation.]" (*Law School Admission Council, Inc. v. State of California* (2014) 222 Cal.App.4th 1265, 1280.) On appeal, "questions underlying the preliminary injunction are reviewed under the appropriate standard of review. Thus, for example, issues of fact are subject to review under the substantial evidence standard; issues of pure law are subject to independent review. [Citation.]" (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1136-1137; accord, *420 Caregivers, LLC v. City of Los Angeles* (2012) 219 Cal.App.4th 1316, 1331.)

Because the propriety of the preliminary injunction in this case turns on a legal issue, the interpretation of a local ordinance, our review is de novo. (See, e.g., *Efstratis v. First Northern Bank* (1997) 59 Cal.App.4th 667, 671-672 ["Where the 'likelihood of prevailing on the merits' factor depends upon a question of law . . . the standard of review is not abuse of discretion but whether the superior court correctly interpreted and applied

---

[6]    Defendants rest their claim of error solely on the likelihood of success; they do not address the balance of harm.

[7]    For reasons we shall explain, we decline to address defendants' contention that the Vehicle Code preempts Proposition D. Defendants forfeited that contention by failing to raise it before the trial court.

8

statutory law, which we review de novo"]; see also *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1206 [applying rules of statutory construction to voter initiative].)

>    B.    *The City Established It Is Likely to Prevail Because Proposition D Virtually Bans Delivery of Medical Marijuana by Vehicles*

Proposition D's definition of a "[m]edical marijuana business" comprises two distinct elements: (1) "[a]ny location," meaning a "parcel of land," and (2) "[a]ny vehicle or other mode of transportation . . . which is used to transport, distribute, deliver, or give away marijuana to a qualified patient, a person with an identification card, or a primary caregiver."  (§ 45.19.6.1, subsec. A.)  Vehicles used by a qualified patient, a person with an identification card, or a primary caregiver as specified are not medical marijuana businesses.  (§ 45.19.6.1, subsec. A.)  But medical marijuana businesses, including vehicles otherwise used to transport marijuana to a lawful recipient, are banned. (§ 45.19.6.2.)

To avoid operating illegally under Proposition D, a medical marijuana business must qualify for limited immunity, which a business can do only if it meets each and every condition set forth in section 45.19.6.3.  The plain text of these various conditions demonstrates the drafters of Proposition D, and the voters who enacted it, contemplated that only fixed establishments, not vehicles, would be permitted to assert the ordinance's immunity defense.

Five of the fifteen specified conditions use the term "premises" when stating their respective requirements (§ 45.19.6.3, subsecs. H-L),[8] and in ordinary, everyday usage,

---

[8]    Medical marijuana businesses may not "allow[] a minor unaccompanied by a parent or legal guardian to enter its premises"; allow marijuana to be "visible from the exterior of the premises"; "illuminate[] any portion of [the] premises" while the shop is closed "by lighting that is visible from the exterior of the premises" (except as reasonably utilized for the "security of the premises"); permit "ingress or egress to its premises" near any land zoned residential; or allow consumption of marijuana or alcohol "at the premises or in any area of the location used for parking any vehicle."  This last condition, which appears in subsection H, is the only one in section 45.19.6.3 that makes any reference to vehicles, and not in a manner that in any way suggests the "premises" or

9

that term means land or structures built on land—not vehicles. (Oxford English Dict. Online, <http://www.oed.com/view/Entry/150302?is Advanced=false&result =1&rskey=831Cu9&> [as of February 19, 2016] ["premises" means "a house or building together with its grounds, outhouses, etc., *esp*. a building or part of a building that houses a business"]; Webster's 3d New Internat. Dict. (2002) p. 1789 ["premises" is "a specified piece or tract of land with the structures on it"].) In two separate places, section 45.19.6.3 also ties a medical marijuana business's ability to assert the ordinance's limited immunity to its operation at the "location" identified in its business tax registration certificate, and as we have already seen, Proposition D defines a "location" to exclude vehicles. (§ 45.19.6.1, subsec. A.) In addition, subsection O prohibits medical marijuana businesses that are located within 1,000 feet of a school or within 600 feet of a public park, public library, religious institution, child care facility, youth center, alcoholism or drug abuse recovery or treatment facility, or any "other medical marijuana business." With such a robust list of geographic restrictions, it would be difficult for a vehicle to navigate the City without running afoul of this provision—after all, schools, public parks, churches, and child care facilities are common City features. But practicality aside, the text of subsection O is more explicit in contemplating immunity only for fixed locations: the provision states that the applicable distances it describes shall be measured from the property line of the school, park, etcetera, to "the closest property line of the lot on which the medical marijuana business is located without regard to intervening structures." It is buildings and structures that are located on "lots" with property lines, not vehicles. Subsection O, like many of the other specified conditions for asserting Proposition D's limited immunity, therefore makes it plain that vehicle-based medical marijuana businesses cannot qualify for immunity under the ordinance. And because vehicles are

---

"location" it refers to could be a vehicle rather than a fixed establishment. Except in the most fanciful hypothetical scenario, one does not park a vehicle in an area of another vehicle.

10

not entitled to immunity, Proposition D essentially prohibits vehicular deliveries of medical marijuana to patients.[9]

Defendants, however, point to other language in Proposition D in support of their contrary reading, specifically, the reference to "delivered" that appears in the definition of a medical marijuana business ("[a]ny location where marijuana is cultivated, processed, distributed, delivered or given away to a qualified patient . . . ."). (§ 45.19.6.1, subsec. A(1)(a).) Defendants reason that this use of the term deliver is an indication that the limited immunity that extends to the fixed locations in the City that dispense medical marijuana likewise extends to any vehicles those businesses would use to "deliver" marijuana to customers. This is a misreading of the provision. When read in context—the key word is "where" (i.e., "[a]ny location where . . . .")—the provision can only mean delivery at the fixed premises of the business. The definition therefore cannot be construed as evidence that the drafters of Proposition D or city voters contemplated that a medical marijuana business would be authorized to make deliveries elsewhere in the City by vehicle.

This derivative immunity argument defendants make, i.e., the immunity which extends to a location should likewise extend to any vehicles such a business might decide to use to make deliveries elsewhere in the City, is also inconsistent with the structure of the two-part medical marijuana business definition. If the ordinance were silent as to the treatment of vehicles, defendants might find some takers for their argument that vehicle delivery was implicitly understood to be an attendant function of a medical marijuana business that is, like other business functions, covered by a grant of limited immunity. But Proposition D is not silent on the matter; it explicitly treats vehicles used to deliver medical marijuana to patients as separate and distinct medical marijuana businesses. And unless a separate medical marijuana business qualifies for immunity—which, as we have

---

[9]     We say "essentially" because, as we have explained, section 45.19.6.1 incorporates a very narrow exclusion from the definition of a medical marijuana business that permits a designated primary caregiver to transport medical marijuana to a qualified patient or person with an identification card for use in accordance with Health and Safety Code section 11362.765.

11

shown, vehicles cannot—it is banned by Proposition D. That Proposition D expressly addresses how vehicles should be treated under the ordinance, and indeed makes a very limited exception to permit vehicle delivery of medical marijuana to patients by their designated primary caregiver (§ 45.19.6.1), belies defendants' contention that Proposition D implicitly treats vehicle delivery as a permissible activity for a business that enjoys limited immunity at a fixed location.

To be sure, there are more direct ways in which the drafters of Proposition D could have conveyed the intention to ban vehicle delivery of medical marijuana by otherwise immune businesses. A single sentence so stating would suffice. But we do not discard a meaning that is apparent upon review of a text merely because additional wordsmithing might have produced a more elegant phrasing. (See, e.g., *General Development Co., L.P. v. City of Santa Maria* (2012) 202 Cal.App.4th 1391, 1396.) Our task is to discern the intention of the voters that approved Proposition D, and we reject defendants' derivative immunity interpretation as inconsistent with the language and structure of the ordinance for the reasons we have described.

Our reading of Proposition D to ban, except in very limited circumstances, vehicle delivery of marijuana to patients is also consistent with the declared purpose of the ordinance: "[T]o stem the negative impacts and secondary effects associated with the ongoing medical marijuana businesses in the City, including but not limited to the extraordinary and unsustainable demands that have been placed upon scarce City policing, legal, policy, and administrative resources; neighborhood disruption, increased transient visitors, and intimidation; the exposure of school-age children and other sensitive residents to medical marijuana; drug sales to both minors and adults; fraud in issuing, obtaining or using medical marijuana recommendations; and murders, robberies, burglaries, assaults, drug trafficking and other violent crimes." (§ 45.19.6.) The intent of Proposition D was not to make medical marijuana obtainable in *more* areas of the City than existed before its enactment, which permitting vehicle delivery would surely do, but rather to limit the number of businesses in operation and to minimize the "negative impacts and secondary effects" of such businesses by tightly regulating their locations

12

and avoiding close proximity to sensitive areas like schools, churches, residential neighborhoods, and places where drug abusers go seeking help to fight their addiction. Allowing the medical marijuana businesses that may assert Proposition D's limited immunity to deliver anywhere in the City would subvert that fundamental purpose.

Defendants contend, however, that interpreting Proposition D to restrict the availability of limited immunity to locations and not delivery vehicles produces an "absurd result." In their view, such an interpretation effectively prohibits all medical marijuana businesses in the City because "many medical marijuana business activities unrelated to delivery of marijuana can presumably take place away from the single parcel of land entitled to immunity." Defendants reason that if vehicles cannot qualify for immunity, marijuana cultivated outside of the City cannot be transported to medical marijuana businesses in the City and employees of medical marijuana businesses cannot drive to meet with "vendors" or perform other activities relating to their participation in the business. We agree with defendants that any interpretation of Proposition D that would force every medical marijuana business to close cannot be correct; we have no doubt that those who enacted Proposition D wanted to "guarantee[] patients access to their medicine." (L.A. Ballot Pamp., Gen. Elec. (May 2013), Argument in Favor of Prop. D.) But our interpretation of the ordinance requires no such result.

Proposition D prohibits "medical marijuana businesses," but by the ordinance's express terms, a vehicle is such a business only when "used to transport, distribute, deliver, or give away marijuana *to a qualified patient, a person with an identification card, or a primary caregiver.*" (§ 45.19.6.1, subsec. A(2) (emphasis added).) Proposition D therefore does not, as defendants suggest, prohibit a medical marijuana business entitled to limited immunity from receiving shipments from cultivators outside the City or using vehicles in connection with legitimate, essential activities associated with running the business. Rather, Proposition D prohibits (with the narrow exception we have already noted) using vehicles to deliver or transport medical marijuana to patients. Such a prohibition in no way threatens the continued existence of those medical marijuana businesses that qualify for limited immunity. Proposition D as we interpret it

13

therefore produces not an absurd result but the precise result voters intended: guaranteeing patients access to their medicine without the harmful effects of widespread, unchecked distribution of marijuana. (§ 45.19.6 ["The purpose of this Article is to enact a materially new ordinance that . . . grants a limited immunity . . . to those medical marijuana businesses that do not violate the restrictions set forth in this ordinance" and to "stem the negative impacts and secondary effects associated with the ongoing medical marijuana businesses in the City. . . ."].)

Defendants have one final interpretive argument left. They contend the measure summary and impartial analysis that appeared in the ballot pamphlet materials for Proposition D described the ordinance as authorizing delivery of medical marijuana by vehicles and they maintain that the voters enacting the proposition adopted that construction. This argument is meritless. We do not rest our interpretation of an ordinance on statements in ballot pamphlet materials where the text of the measure is otherwise unambiguous. (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 602 ["[B]allot materials can help resolve ambiguities in an initiative measure [citation], but they cannot vary its plain import"]; *Board of Supervisors v. Lonergan* (1980) 27 Cal.3d 855, 865-866; *Silicon Valley Taxpayers' Ass'n v. Garner* (2013) 216 Cal.App.4th 402, 407.) But more to the point, and paraphrasing Inigo Montoya,[10] we do not think the ballot pamphlet materials mean what defendants think they mean.

The summary page for Proposition D in the ballot pamphlet states: "This measure exempts from City regulation dwelling units where three (3) or fewer patients and/or caregivers cultivate medical marijuana on-site for themselves or their patients. It also exempts licensed health care facilities and location/vehicles during the time they are used to deliver medical marijuana to a qualified patient." It is indisputable that is a reference to, and summary of, the narrow exclusions from the definition of medical marijuana business set forth in section 45.19.6.1; the summary page tracks those exclusions precisely. (See *ante*, at p. 11.) The same is true regarding the impartial summary of

---

[10]     The Princess Bride (20th Century Fox 1987).

14

Proposition D prepared by Chief Legislative Analyst Gerry F. Miller. After explaining that Proposition D will ban all medical marijuana businesses unless they qualify for immunity, and after summarizing the conditions for immunity, the impartial summary describes the specific exemptions from regulation under Proposition D: certain dwelling units, licensed health care facilities, "and both locations and vehicles during the time they are used to deliver medical marijuana to a qualified patient." (L.A. Ballot Pamp., Gen. Elec. (May 2013), Impartial Summary.) This reference to vehicles, given its placement and context, again refers to—and would be understood to refer to—the exclusion for vehicles driven by qualified patients, persons with an identification card, or their designated primary caregivers. Neither the summary page nor the Impartial Summary prepared by Miller signifies an intent to exempt *all* vehicles used to deliver marijuana to patients, an intent that would run contrary to the text of Proposition D, which generally prohibits vehicular medical marijuana businesses.

Because Proposition D is properly understood to prohibit virtually all vehicular delivery of medical marijuana, the trial court properly concluded the City was likely to succeed on the merits of its claims that defendants caused, aided, and abetted illegal marijuana delivery in violation of Proposition D through development of the Nestdrop app. (§ 11.00, subsec. (j) ["Whenever in this Code any act or omission is made unlawful it shall include causing, permitting, aiding, abetting, suffering or concealing the fact of the act or omission"].)

**[Part II.C, below, is deleted from publication. See *post* at page 17 for where publication is to resume.]**

C. *Defendants Forfeited Their Preemption Argument by Failing to Raise it Below*

Defendants contend that sections 21 and 22455 of the California Vehicle Code preempt Proposition D to the extent that the ordinance bans vehicular deliveries by

15

medical marijuana businesses.[11] Defendants acknowledge they did not raise this issue during the trial court proceedings but maintain we should consider it because it is not a "new theory" but merely a "new argument" for defendants' single, overarching theory: that Proposition D does not prohibit medical marijuana businesses from making vehicular deliveries.

We reject defendants' characterization of their preemption theory as merely a "new argument" that we should address despite their failure to raise it before the trial judge that issued the injunction. (See, e.g., *Xiloj-Itzep v. City of Agoura Hills* (1994) 24 Cal.App.4th 620, 633 [in plaintiffs' challenge to the validity of a municipal ordinance, a preemption argument raised for the first time on appeal was a "change in theory"].) Defendants' conception of what constitutes a "new argument" is so broad as to permit them to raise for the first time on appeal just about any issue in favor of their position. We cannot countenance such a view.

While we do have discretion to consider a new theory that presents a pure issue of law (see *City of Scotts Valley v. County of Santa Cruz* (2011) 201 Cal.App.4th 1, 28-29), here we decline to exercise our discretion to consider defendants' meritless preemption argument at length. Suffice it to say that the Vehicle Code does not address medical marijuana or deliveries of medical marijuana, and there is therefore no conflict between state and municipal law triggering preemption. By contrast, the Health and Safety Code

---

[11]     Vehicle Code section 21 provides that "a local authority shall not enact or enforce any ordinance or resolution on the matters covered by this code, including ordinances or resolutions that establish regulations or procedures for, or assess a fine, penalty, assessment, or fee for a violation of, matters covered by this code, unless expressly authorized by this code." Vehicle Code section 22455, subdivision (a) requires commercial drivers "engaged in vending" to make a complete stop and lawfully park the vehicle before they "vend products on a street in a residence district." Subdivision (b) permits cities to "adopt additional requirements for the public safety regulating the type of vending and the time, place, and manner of vending from vehicles upon any street." Defendants cite *Barajas v. City of Anaheim* (1993) 15 Cal.App.4th 1808, in which the Fourth District held that section 22455 preempted a municipal ordinance that the City of Anaheim used to prohibit street vendors from selling produce on streets in residential areas. (*Id.* at p. 1811.)

16

does extensively regulate medical marijuana, but it expressly permits municipalities to make appropriate use of their police powers and regulatory authority to limit and even eliminate the availability of medical marijuana. (Health & Saf. Code § 11362.768, subd. (f) [Medical Marijuana Program permits cities to "further restrict the location or establishment" of medical marijuana dispensaries]; Health & Saf. Code § 11362.83, subd. (c) [Medical Marijuana Program permits cities to "enact[] other laws consistent with this article"]; Health & Saf. Code § 11362.5, subd. (b)(2) [Compassionate Use Act "shall [not] be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others"]; see also *City of Riverside*, *supra*, 56 Cal.4th at pp. 737-738 [state medical marijuana laws do not preclude city from exercising regulatory authority to ban medical marijuana dispensaries].)

**[The remainder of the opinion is to be published.]**

### D.     Conclusion

The City established a likelihood of proving defendants' Nestdrop app caused, aided, or abetted the violation of Proposition D because, outside of the narrow exception for designated primary caregivers, it prohibits the vehicular delivery of medical marijuana to qualified participants, identification card holders, or primary caregivers in the City. Because the City has demonstrated a likelihood of success on its claim that defendants facilitated a violation of Proposition D, defendants' opposition to the City's unfair competition allegations necessarily fails. Defendants made no showing at all concerning the balance of hardships, much less that the balance tipped sharply in their favor. The trial court was right to enter a preliminary injunction.

17

DISPOSITION

The order granting the preliminary injunction is affirmed.  The City is to recover its costs on appeal.


CERTIFIED FOR PARTIAL PUBLICATION



BAKER, J.


We concur:



KRIEGLER, Acting P. J.



KUMAR, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.