Filed 8/30/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE ex rel. MICHAEL N. FEUER, as City Attorney, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> FXS MANAGEMENT, INC. et al., <br><br> Defendants and Appellants. | B263965 <br><br> (Los Angeles County Super. Ct. No. NC059910) |

APPEAL from an order of the Superior Court of Los Angeles County, Ross M. Klein, Judge. Affirmed.

Law Offices of Mieke Ter Poorten, Mieke Ter Poorten, Hobson Bernardino + Davis, Rafael Bernardino, Jr. for Defendants and Appellants.

Michael N. Feuer, City Attorney, Asha Greenberg, Assistant City Attorney, Anh Truong, Christian Commelin and Rahi Azizi, Deputy City Attorneys for Plaintiff and Respondent.

## INTRODUCTION

In this nuisance abatement action, the People of the State of California (the People) filed an action against defendants and appellants FXS Management, Inc., which does business as "Weedland," and its principal, Franky Silva. The People alleged that Weedland was an illegal medical marijuana business under the City of Los Angeles Municipal Code, and sought an injunction against the continuing operation of Weedland. Defendants argued that Weedland was a medical marijuana "collective," and therefore did not fall under the limitations of the Municipal Code. The trial court found that Weedland did fall under the statute, and therefore that the People showed a likelihood of prevailing. The court issued a preliminary injunction, and defendants appealed.

We affirm. The applicable Municipal Code section broadly defines a "medical marijuana business" as any location where medical marijuana is "distributed, delivered, or given away." Weedland is a location that distributes medical marijuana to its "members," and is therefore a medical marijuana business as defined in the Municipal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 21, 2013, the voters of the City of Los Angeles approved Proposition D, the Medical Marijuana Regulation and Taxation Ordinance, a ballot measure intended to regulate medical marijuana businesses. (See *Safe Life Caregivers v. City of Los Angeles* (2016) 243 Cal.App.4th 1029, 1037 (*Safe Life Caregivers*).) Proposition D "repealed the existing sections of the municipal code relating to medical marijuana, and enacted new provisions." (*Ibid.*)

Proposition D provides that within the City of Los Angeles, it is "unlawful to own, establish, operate, use, or permit the establishment or operation of a medical marijuana business, or to participate as an employee, contractor, agent or volunteer or in any other manner or capacity in any medical marijuana business." (Los Angeles Municipal Code (LAMC), § 45.19.6.2, subd. A.) Proposition D broadly defines a "medical marijuana business" as "[a]ny location where marijuana is cultivated, processed, distributed,

2

delivered, or given away to a qualified patient, a person with an identification card, or a primary caregiver."[1]  (LAMC, § 45.19.6.1, subd. A.)

In July 2014, defendants opened Weedland, which they characterize as a "medical marijuana collective" that "facilitates and coordinates medical marijuana transactions between its private members and caregiver members."  In early February 2015, two undercover Los Angeles Police Department officers visited Weedland twice and, after filling out Weedland paperwork and showing their identifications and medical marijuana recommendations, purchased marijuana during each visit.

On February 11, 2015, the People filed a complaint against defendants alleging violations of Proposition D.[2]  The People requested a temporary restraining order or an order to show cause regarding a permanent injunction.  (See LAMC, § 11.00 [allowing for abatement of a nuisance "by means of a restraining order, injunction or any other order or judgment in law or equity issued by a court of competent jurisdiction"].)  The People submitted evidence in support of their request, including declarations from the undercover officers who purchased marijuana from Weedland.

Defendants filed an opposition and a supplemental opposition that argued, in part, that because defendants operated a members-only medical marijuana "collective," they did not operate a medical marijuana "business," and therefore Proposition D did not apply to them.[3]  Defendants submitted evidence in support of their opposition, including declarations by defendant Franky Silva, who operates FXS Management, Inc., d.b.a. Weedland.  Silva stated that Weedland "acquires . . . lawfully cultivated medical marijuana, possesses . . . lawfully cultivated medical marijuana and . . . distributes lawfully cultivated medical marijuana" to members who have a "valid California state

---

[1]"'Identification card' means a document issued by the State Department of Health Services that [ ] identifies a person authorized to engage in the medical use of marijuana and the person's designated primary caregiver, if any."  (Health & Saf. Code, § 11362.7, subd. (g).)

[2]Angel Montes, Jr., the owner of the property where Weedland was located, was also named as a defendant in the complaint.  Montes is not a party to the appeal.

[3]Defendants' additional arguments in their opposition are not relevant to this appeal and are not recounted here.

medical marijuana identification card." Silva explained that to his understanding, a "marijuana business" is a for-profit business open to all members of the public, and therefore Weedland, a not-for-profit, members-only "collective," was not a "business" under the definition of Proposition D. Defendants' attorney, Rafael Bernardino, submitted a declaration expressing a similar understanding about the differences between a medical marijuana "business" and a "collective."

After a hearing, the court held that "Proposition D applies to marijuana collectives," and that the People were "likely to prevail on [the] claim that Defendants are operating a marijuana business in violation of" Proposition D. The trial court issued a preliminary injunction barring defendants from operating Weedland "or any other medical marijuana business and/or collective" in the City.

Defendants timely appealed. (See Code Civ. Proc., § 904.1, subd. (a)(6).)

## STANDARD OF REVIEW

"[W]hether a preliminary injunction should be granted involves two interrelated factors: (1) the likelihood that the plaintiff will prevail on the merits, and (2) the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief." (*White v. Davis* (2003) 30 Cal.4th 528, 554.) When the plaintiff is a governmental entity seeking to enjoin illegal activity, a more deferential standard applies: "Where a governmental entity seeking to enjoin the alleged violation of an ordinance which specifically provides for injunctive relief establishes that it is reasonably probable it will prevail on the merits, a rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the defendant. If the defendant shows that it would suffer grave or irreparable harm from the issuance of the preliminary injunction, the court must then examine the relative actual harms to the parties." (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 72 (*IT Corp.*); *City of Corona v. AMG Outdoor Advertising, Inc.* (2016) 244 Cal.App.4th 291, 299 (*City of Corona*).)

On appeal, factual findings made by the trial court must be accepted if supported by substantial evidence, the decision to issue a preliminary injunction is reviewed for an abuse of discretion, and questions of law are reviewed de novo. (*420 Caregivers, LLC v.*

4

*City of Los Angeles* (2012) 219 Cal.App.4th 1316, 1331.)  "Because the propriety of the preliminary injunction in this case turns on a legal issue, the interpretation of a local ordinance, our review is de novo."  (*People ex rel. Feuer v. Nestdrop, LLC* (2016) 245 Cal.App.4th 664, 672 (*Nestdrop*).)

## DISCUSSION

When considering the meaning of a statute, we first examine the words themselves because "the statutory language is generally the most reliable indicator of legislative intent."  (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715.)  The parties agree that "[i]f the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls".  (*Fitch v. Select Products Co*. (2005) 36 Cal.4th 812, 818.)

As noted above, Proposition D defines a "medical marijuana business" as "[a]ny location where marijuana is cultivated, processed, distributed, delivered, or given away to a qualified patient, a person with an identification card, or a primary caregiver." (LAMC, § 45.19.6.1, subd. A; see also *Nestdrop, supra*, 245 Cal.App.4th at pp. 668-670 [discussing the definition of a medical marijuana business under Proposition D].) Defendants state that Weedland "facilitates and coordinates medical marijuana transactions between its private patient members and caregiver members."  It "provides medical marijuana to . . . [m]embers who use medical marijuana to treat a number of serious and painful health ailments."  Silva's declaration stated that Weedland acquires medical marijuana, possesses medical marijuana, and distributes medical marijuana to members who possess valid California state medical marijuana identification cards. Weedland, therefore, falls squarely under the definition of a medical marijuana business as defined in Proposition D, because it is a location where marijuana is distributed or delivered to persons with identification cards.

Defendants do not cite Proposition D's definition of a "medical marijuana business" anywhere in their opening brief (and they did not file a reply brief). Defendants therefore do not argue that the definition in Municipal Code section 45.19.6.1, subdivision A does not apply to Weedland.  Instead, they argue generally that a

5

medical marijuana "business" is open to the public, while a medical marijuana "collective" only distributes marijuana to members. As a result, defendants argue, Weedland is not regulated by Proposition D, because "[n]owhere in [Proposition D] are "collectives" defined or even mentioned." Rather, defendants state that the People rely on an "unavailing circular argument: medical marijuana *collectives* cannot operate because medical marijuana *businesses* are not allowed to do so." According to defendants, "the [People's] argument boils down to an incorrect reading of business," because a "person of common intelligence can and may reasonably interpret all of the statements" regulating medical marijuana in Los Angeles "as banning medical marijuana businesses but permitting medical marijuana collectives."

Defendants' argument is meritless.[4] In support of their position, defendants cite a patchwork of non-binding sources, such as the California Attorney General's 2008 "Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use" and a December 21, 2011 letter from the California Attorney General to members of the Legislature requesting clearer legal parameters about "how, when, and where individuals may cultivate and obtain physician-recommended marijuana." Because these sources reference medical marijuana "collectives," defendants argue, Proposition D's regulation of medical marijuana businesses does not apply to them.

California law allows "a city or other local governing body" to adopt and enforce "local ordinances that regulate the location, operation, or establishment of a medical marijuana cooperative or collective." (Health & Saf. Code, § 11362.83.) State law also allows "a city, county, or city and county [to adopt] ordinances or policies that further

_____

[4]We remind counsel that "[a]ttorneys are officers of the court and have an ethical obligation to advise the court of legal authority that is directly contrary to a claim being pressed." (*In re Reno* (2012) 55 Cal.4th 428, 510; see also Rules of Professional Conduct, rule 5-200(B), (C), (D) [a bar member may not "seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law," "intentionally misquote to a tribunal the language of a book, statute, or decision," or "cite as authority a decision that has been overruled or a statute that has been repealed."].) Defendants had an obligation to bring to the court's attention the definition of "medical marijuana business" in the relevant Municipal Code section.

6

restrict the location or establishment of a medical marijuana cooperative, collective, dispensary, operator, establishment, or provider." (Health & Saf. Code, § 11362.768, subd. (f).) The California Supreme Court has made clear that municipalities such as the City of Los Angeles have the authority to prohibit the distribution of medical marijuana within their jurisdictions "by declaring such conduct on local land to be a nuisance, and by providing means for its abatement." (*City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc*. (2013) 56 Cal.4th 729, 762 (*City of Riverside*).) Defendants present no authority supporting the suggestion that in implementing such regulations, a local jurisdiction is not free to define a medical marijuana "business" or "collective" or "dispensary" in whatever manner it deems appropriate.

Defendants attempt to distinguish *City of Riverside* by arguing that the zoning ordinances in that case "banned all three types of medical marijuana organizations: cooperatives, collectives, and dispensaries." In fact, the ordinances at issue in *City of Riverside* stated that a "medical marijuana dispensary" could be deemed a nuisance. (*City of Riverside*, *supra*, 56 Cal.4th at p. 740.) A medical marijuana dispensary, in turn, was defined as "'[a] facility where marijuana is made available . . . in accordance with'" the Compassionate Use Act, Health & Safety Code section 11362.5. (*Ibid*.) The Supreme Court noted that "the planning division of Riverside's Community Development Department notified [a party in the case] by letter that the definition of 'medical marijuana dispensary' in Riverside's zoning ordinances 'is an all-encompassing definition, referring to all three types of medical marijuana facilities, a dispensary, a collective and a cooperative,' and that, as a consequence, 'all three facilities are banned in the City of Riverside.'" (*Ibid*.)

Here, Proposition D's definition is similarly broad, because it defines a "medical marijuana business" as "[a]ny location where marijuana is cultivated, processed, distributed, delivered, or given away to a qualified patient, a person with an identification card, or a primary caregiver." (LAMC, § 45.19.6.1, subd. A.) Nothing in *City of Riverside* suggests that the definition in Proposition D excludes self-identified "collectives" from its definition. To the contrary, the broad interpretation of "medical

7

marijuana dispensary" in the ordinance in *City of Riverside* demonstrates that an expansive definition of "medical marijuana business" within the Los Angeles Municipal Code fully accords with state law.

Furthermore, because the language defining "medical marijuana business" in Proposition D is clear, we do not need to resort to secondary sources in an effort to determine a meaning. "If the statutory language is clear and unambiguous our inquiry ends." (*Murphy v. Kenneth Cole Productions, Inc*. (2007) 40 Cal.4th 1094, 1103.) Defendants have not cited any sources indicating that Proposition D's definition of "medical marijuana business" means anything other than what it says. And defendants' own statements about Weedland show that it falls under the definition of a medical marijuana business in Proposition D, because it is a location where marijuana is distributed, delivered, or given away to qualified patients or persons with relevant identification cards.

The People therefore have demonstrated a likelihood of prevailing on the merits, satisfying the first prong of the preliminary injunction test. We presume the existence of public harm, because "[w]here a legislative body has enacted a statutory provision proscribing a certain activity, it has already determined that such activity is contrary to the public interest." (*IT Corp.*, *supra*, 35 Cal.3d at p. 70.) Defendants argue that the People are "not entitled to the rebuttable presumption because the ordinance in question does not address "collectives," only businesses." For the reasons discussed above, we reject this argument.

Defendants may rebut the presumption of harm by showing that they would suffer grave or irreparable harm from the issuance of the preliminary injunction. (*IT Corp.*, *supra*, 35 Cal.3d at p. 70; C*ity of Corona, supra*, 244 Cal.App.4th at p. 299.) Defendants argue that the balance of harms weighs in favor of denying the injunction, because "[o]n the one hand the City offers a vague statute, which has never been challenged before, and no evidence of harm; on the other hand, the Collective offered real medical harm [*sic*] to approximately 2,300 Collective Members, and reliance on a statute that excludes collectives from enforcement." Defendants also argue that an injunction would bar

8

Weedland members "from being able to obtain medical marijuana as a medical treatment."

Defendants have presented no evidence to indicate that medical marijuana patients who formerly received marijuana from Weedland are unable to receive marijuana from medical marijuana businesses within the City of Los Angeles that fall within the exceptions to Proposition D,[5] or from medical marijuana businesses outside the City's jurisdiction. To the contrary, the single declaration defendants submitted from a Weedland patron stated that she "visited several Medical Marijuana Collectives and chose [Weedland] due to their good service and concern for my medical situation." The witness's statements indicate that there are alternative sources of medical marijuana, and that the injunction will not bar her from receiving medical marijuana from other sources. Moreover, there is no statutory right to the purchase or sale of medical marijuana, and therefore local regulation of medical marijuana businesses cannot infringe upon any such right. (See *Safe Life Caregivers, supra*, 243 Cal.App.4th at p. 1048-1049.)

Defendants argue that the injunction infringes constitutionally protected freedom of speech because it "prevent[s] the Collective from distributing and displaying information about medical marijuana therapy to its Members, on its premises." They also argue that the injunction interferes with Weedland members' freedom of association. Defendants do not specify whether they contend that their state or federal rights are being infringed. Whatever their contention, the injunction does not limit defendants' speech or association, other than a requirement that Weedland remove signage from its property advertising its business. As the injunction does not limit defendants' speech or ability to associate with whomever they choose, it does not infringe on any such rights that may exist under the state or federal constitutions. Moreover, Proposition D itself applies only to a "location where marijuana is cultivated, processed, distributed, delivered, or given

---

[5]Proposition D provides limited immunity for medical marijuana businesses registered in accordance with earlier applicable ordinances and in compliance with applicable tax requirements. (See LAMC, § 45.19.6.3.)

9

away," and therefore does not inhibit communication of information about medical marijuana or the association of people interested in marijuana.

Defendants have not demonstrated that they would suffer grave or irreparable harm from the preliminary injunction. (*IT Corp., supra*, 35 Cal.3d at p. 72.) The trial court's issuance of the preliminary injunction was therefore warranted, and defendants have not demonstrated error on appeal.

## DISPOSITION

The order is affirmed. The People shall recover their costs on appeal.

**CERTIFIED FOR PUBLICATION**

COLLINS, J.

We concur:

WILLHITE, Acting P. J.

MANELLA, J.