Filed 11/30/23  County of Los Angeles v. Yakovi CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| COUNTY OF LOS ANGELES et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> SHAUL YAKOVI et al., <br><br> Defendants and Appellants. | B311483, B313322 <br><br> (Los Angeles County Super. Ct. No. 20STCV40645) |

APPEAL from orders of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

Law Office of Mainak D'Attaray and Mainak D'Attaray for Defendants and Appellants.

Miller Barondess, Amnon Z. Siegel, Jason H. Tokoro, Andrew L. Shrader, and Eleanor S. Ruth for Plaintiffs and Respondents.

Defendants and appellants Shaul Yakovi (Yakovi), Ronit Waizgen, and Ben and Reef Gardens Inc. own and operate Gardens of Paradise, an events venue in Santa Clarita (the venue). Plaintiffs and respondents County of Los Angeles and Public Health Officer Muntu Davis, M.D. (collectively, the County) filed a civil action against defendants for, among other things, violating (1) the County of Los Angeles Fire Code (Fire Code)[1] and zoning laws and (2) the County of Los Angeles COVID-19 Health Officer order that was then in force in 2020 (Health Order). At the County's request, the trial court entered a preliminary injunction prohibiting defendants from hosting events at the venue until they remedied the Fire Code violations and complied with the then-existing mandates of the Health Order. Defendants appeal from the order issuing the injunction and from subsequent orders concerning the injunction, including a modification of its terms. We consider (1) whether the orders challenged on appeal are moot insofar as they are predicated on aspects of County Health Officer orders that no longer exist in light of changed public health conditions and (2) whether the injunction is justified insofar as it is predicated on Fire Code violations.

---

[1] "Except as changed, amended, added to, or removed, as established by ordinance and reflected [within it]," the County of Los Angeles Fire Code incorporates the California Fire Code, located at Part 9 of California Code of Regulations Title 24, and certain chapters of the International Fire Code. (Los Angeles County Code, § 32.100.)

# I. BACKGROUND

### A. *Fire Code and Health Order Violations*

In August 2020, just months into the COVID-19 pandemic, the Los Angeles County Department of Public Health received complaints that there were large events taking place at the venue in violation of the Health Order, which prohibited large gatherings and required specific public health protocols for smaller gatherings. In September and October 2020, Los Angeles County officials from the Department of Public Health, the Sherriff's Department, and the Fire Department inspected the venue on multiple occasions, each time finding violations of the Fire Code and then-existing Health Order.

Health Order violations included hosting an "unapproved large event" of over 200 guests, not posting required COVID-19 protocols or signs, hosting live entertainment, providing valet parking, attendees not wearing required face coverings, "wait staff not wearing face shields," and employees and attendees not practicing social distancing. Fire Department personnel identified three violations of the Fire Code during the first site visit: a non-permitted tent structure, use of an office building and two bathrooms without final occupancy approval, and failure to install fire hydrants. The violations persisted unremedied on four additional site visits, and County personnel issued violation notices each time.

### B. *The County Sues and Seeks Injunctive Relief*

With the observed violations still unremedied, the County sued defendants in October 2022 alleging violations of the then-effective Health Order, the County Fire Code and zoning laws,

3

and public nuisance laws (Code Civ. Proc., § 731).[2]  The County prayed for injunctive relief and civil penalties.

The same day it filed suit, the County applied ex parte for a temporary restraining order and for issuance of an order to show cause why a preliminary injunction should not issue.  The county argued defendants' repeated violations of the Health Order and the Fire Code created a public nuisance, endangered the community, and threatened irreparable harm because of the risk of COVID-19 transmission and the risk of fire.  An accompanying declaration from Fire Department Battalion Chief Steven Swiatek attested to the previously found Fire Code violations.  A declaration from Mark Como, an Environmental Health Specialist with the County's Department of Public Health, averred defendants had continued to hold events at the venue after the County's lawsuit had been filed.

The trial court granted the request for a temporary restraining order (as to Ben and Reef Gardens Inc. and Yakovi only) and ordered defendants to show cause why a preliminary injunction should not issue.[3]  Yakovi opposed the County's

---

[2]     A first amended complaint was filed two months later adding a claim under the Unfair Competition Law that relied on the other identified violations of law in the complaint as the predicate for an unlawful business practice.

[3]     Before the court considered whether to issue a preliminary injunction, the County obtained evidence defendants were continuing to host events in violation of the terms of the restraining order.

4

request for a preliminary injunction.[4]  He argued the County was unlikely to succeed on the merits of its Health Order-related claims because the venue was hosting "religious weddings and other religious events" in compliance with the County's rules for providers of religious and cultural ceremonies.  He further argued the County was unlikely to succeed on the merits of its Fire Code-related claims because the tent structure was not subject to regulation (he argued it was not a permanent structure and not a "tent" because it was a canopy open on all sides) and because there were other areas of the venue used to host events separate from the areas where violations were found.  Yakovi also argued the balance of harms tipped in his favor.

C.      *The Trial Court Issues a Preliminary Injunction, Which Is Later Modified After Defendants' Continued Noncompliance*

After hearing argument from the parties over the course of two hearings in December 2020, the trial court granted the County's requested preliminary injunction.

As to the claimed violation of the Health Order, the court found the County had shown a likelihood of success on the merits because defendants hosted large gatherings four times in October 2020 (after receiving multiple County citations and even after the court's restraining order prohibited such events) without complying with the Health Order's requirements.  The court also rejected Yakovi's argument that the Health Order violated his or

---

[4]      Defendant Ben and Reef Gardens Inc. did not file an opposition because it was a suspended corporation and could not participate in the litigation.

5

his customers' constitutional rights under the Free Exercise Clause.

Regarding the Fire Code violations, the court rejected Yakovi's contention that a permit for the tent (or canopy) was not required under the terms of Fire Code section 105.6.47 [current section 105.5.49].[5] The court also found defendants had not contested the other asserted violations of the Fire Code (structures without final occupancy approval and lack of fire hydrants), which the court characterized as a "fatal" concession because it demonstrated the County necessarily had shown a likelihood of success on the merits as to at least those Fire Code-related claims.

The trial court also analyzed the balance of relative harms asserted by the County and defendants. The court found there was a risk of irreparable harm to the public because "[t]he Venue's violation of the . . . Fire Code represent[s] significant community risk" and the County was in any event entitled to a presumption of public harm because it had demonstrated a likelihood of success on the merits. By contrast, the court found defendants' asserted harms were overstated because they were

---

[5] The Fire Code was repealed and replaced effective March 2, 2023, and some of the pertinent section numbers of the code changed as a result. We refer in this opinion to the section numbers in existence at the time of the preliminary injunction, with parenthetical or marginal references to the current code as necessary. Fire Code section 105.6.47 [current section 105.5.49] provided "[a]n operational permit is required to operate an air-supported temporary membrane structure, a temporary special event structure or a tent having an area in excess of 400 square feet . . . ." The same section allows an exception for "[t]ents open on all sides" if such a tent has a maximum size of 700 square feet.

6

partly self-inflicted: defendants would be financially harmed by having to close the venue, but that was because they chose not to comply with the Fire Code requirements. Balancing the two showings, the court concluded the "overall risk to the community" was greater and "the harm of not imposing the injunction outweighs the harm . . . that will be suffered by Defendant Yakovi and his customers."

The trial court thereafter entered an injunction on January 6, 2021, prohibiting defendants from: "1. Conducting, participating in, or hosting events at [the venue] until Defendants comply with the Fire Code, including the permitting requirements of . . . Fire Code [sections] 105.3.3, 105.6.37 and 105.6.47 [current section 150.5.49], as well as the fire-suppression equipment requirements of . . . Fire Code [section] 903.2.1; and [¶] 2. Once Defendants have complied with the Fire Code, conducting, participating in, or hosting events at the Property which violate the operative provisions of the Revised Temporary Targeted Safer At Home Health Officer Order For Control Of COVID-19, most recently amended on December 19, [2020,] or any superseding Health Officer Order (the "County Health Order") that may be in effect at that time."

Three weeks later, Yakovi filed an ex parte application to clarify or modify the preliminary injunction. As to the injunction's first clause prohibiting events at the venue until the Fire Code violations were remedied, Yakovi argued the Fire Code provisions did not apply to the venue's four outdoor event sites and the court should accordingly "clarify that the [preliminary injunction] does not reach activity or conduct that is not illegal or a violation of the Fire Code . . . ."

7

The County opposed the application and supported its opposition with a declaration from a deputy sheriff who attested to responding to a noise complaint at the venue on January 17, 2021, and observing "a Hummer stretch limo as well as dozens of other cars parked inside the Property" while hearing loud music and many people partying.

The trial court denied the application and found Yakovi had "failed to meet his burden of demonstrating entitlement to a modification or clarification of the preliminary injunction. The preliminary injunction requires Defendants to comply with the Fire Code before hosting any events at the venue—something required of any space in the County without the need for a preliminary injunction. There is no evidence before the court that suggests Defendants have, in fact, complied with the Fire Code" and "no evidence [that] suggests [the existence of] a dispute between the County and Defendants concerning Fire Code compliance." Defendants thereafter noticed an appeal from this ruling and the earlier decision granting the preliminary injunction.

In April 2021, the County applied ex parte to modify the preliminary injunction. The County advised the court, via a declaration from a sergeant at Los Angeles County Sheriff's Department, that defendants had again violated the terms of the preliminary injunction in place by holding an event at the venue. The County asked the court to add enforcement provisions to the existing injunction that would direct the venue's utility service provider to shut off service and authorize the County to erect barricades preventing access to the venue and to enter the venue and remove any individuals present in violation of the preliminary injunction. Yakovi opposed the application and

8

contended, with regard to the Fire Code compliance clause of the injunction, that the injunction did not apply to the four outdoor event sites at the venue that were in compliance with the Fire Code.

The trial court granted the County's motion to modify the preliminary injunction as requested. The court also denied defendants' oral motion to stay the additional provisions of the modified preliminary injunction from taking effect while the appeal of the preliminary injunction was pending. Defendants noticed an appeal from this order modifying the preliminary injunction too, and this court consolidated the appeals (from the preliminary injunction and the subsequent clarification and modification orders) for decision.

## II. DISCUSSION

The bulk of this appeal is now moot. As the County concedes, no health officer order exists at present that limits defendants' operations. Defendants acknowledge this means their challenge to the injunction requiring compliance with previously issued health officer orders "should be moot."[6] The County, however, asks that we nevertheless rule on the moot issue as one "of substantial and continuing interest for the parties and the public that may well recur." We decline. The County's request is admittedly and impermissibly speculative ("that may well recur"; "to the extent a future Health Order is in

---

[6] Also moot is defendants' purported appeal of the trial court's refusal to stay the modified injunction while appellate proceedings were pending. Defendants never sought supersedeas relief in this court, and we can grant no effective relief on that score at this stage of the appellate proceedings.

9

place") and amounts to an invitation to issue an advisory opinion on the nature and extent of the County's emergency powers—something we do not do.  (See, e.g., *Verdugo v. Target Corp.* (2014) 59 Cal.4th 312, 316, fn. 1 ["we do not resolve abstract questions of law"]; *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132 ["It is settled that 'the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it'"].)

What is left for decision, then, is only the propriety of the trial court's operative preliminary injunction that prohibits operations at the venue until the Fire Code deficiencies are remedied.  We hold the trial court correctly concluded that an injunction should issue to that effect: the County is likely to succeed on the merits (no matter whether the structure is characterized as a tent or a canopy it still falls within the scope of the relevant Fire Code provision and when outdoor event spaces are used, other unapproved structures—most prominently, bathrooms—are also necessarily used) and the trial court correctly concluded the balance of harms tips in the County's favor.

###### A.     *Preliminary Injunction Standards*

"In deciding whether to issue a preliminary injunction, a trial court must evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his [or her] claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the

issuance and nonissuance of the injunction.  On appeal, questions underlying the preliminary injunction are reviewed under the appropriate standard of review.  Thus, for example, issues of fact are subject to review under the substantial evidence standard; issues of pure law are subject to independent review." (*People ex rel. Feuer v. Nestdrop, LLC* (2016) 245 Cal.App.4th 664, 672 [cleaned up].)

>    B.    *The Trial Court Was Correct to Preliminarily Enjoin Use of the Venue Until the Identified Fire Code Violations Were Cured*
>          1.    *Likelihood of success on the merits*

The trial court correctly found that the County is likely to prevail on the merits of its Fire Code violation claim.  The Fire Code requires proof, in the form of permits and inspections, that "applicable provisions of [the] code have been met" before buildings and structures may be occupied.  (§ 105.3.3.)  The Fire Code also requires operational permits when operating "an air-supported temporary membrane structure, a *temporary special event structure* or a *tent* having an area in excess of 400 square feet."  (§ 105.6.47, italics added.)

A permit was obviously required for defendant's tent, which is a 10,000 square foot, circular, fabric covered structure.  As defined in the Fire Code, a "temporary special event structure" is "[a]ny temporary ground-supported structure, platform, stage, stage scaffolding or rigging, *canopy*, tower supporting audio or visual effects equipment or similar structures not regulated within the scope of the California Building Code."  (Fire Code, § 202, italics added.)  To the same end, a "tent" is defined as "[a] structure, enclosure, umbrella structure or shelter, *with or*

11

*without sidewalls* or drops, constructed of fabric or pliable material supported in any manner except by air or the contents it protects." (Fire Code, § 202, italics added.) Defendants' tent falls within both definitions, so it does not matter whether the tent is permanent or whether it is open on all sides. The exception for tents 700 square feet or smaller that we previously mentioned in the margin also does not apply.

In addition, and as in the trial court, defendants have no valid rejoinder to the other identified Fire Code violations upon which the injunction is predicated. All defendants assert is that Fire Code requirements do not apply to "purely outdoor" event spaces. That, however, is unpersuasive for two reasons. First, defendants never adduced adequate evidence below that there are such purely outdoor event spaces; when the trial court specifically invited Yakovi to come forward with such evidence, he did not. Second, even fully outdoor event spaces require ancillary use of, or support from, at least some of the structures at the venue that lack final approval; as the trial court put it, "it strains credulity that there would be an event there where there's no working bathroom."

### 2. *Interim harms*

"To obtain a preliminary injunction, a plaintiff ordinarily is required to present evidence of the irreparable injury or interim harm that it will suffer if an injunction is not issued pending an adjudication of the merits." (*White v. Davis* (2003) 30 Cal.4th 528, 554.) However, "[w]here a governmental entity seeking to enjoin the alleged violation of an ordinance which specifically provides for injunctive relief establishes that it is reasonably probable it will prevail on the merits, a rebuttable

12

presumption arises that the potential harm to the public outweighs the potential harm to the defendant.  If the defendant shows that it would suffer grave or irreparable harm from the issuance of the preliminary injunction, the court must then examine the relative actual harms to the parties."  (*IT Corp. v. County of Imperial*, 35 Cal.3d 63, 72, footnote omitted.)

Even putting aside the presumption of public harm that arises when county counsel of any county brings an action to abate a public nuisance (Code Civ. Proc., § 731), the trial court's finding that the harm of not issuing the injunction outweighed any harm that would arise from issuing it is still well-supported.  The trial court based its determination on "the significant community risk" posed by the Fire Code violations.  In addition, while the trial court acknowledged defendants' potential economic harm from having to shutter the venue, it also properly recognized the harm was self-inflicted and accordingly entitled to lesser weight.

> 3. *The preliminary injunction is not impermissibly vague or overbroad*

"'An injunction must be narrowly drawn to give the party enjoined reasonable notice of what conduct is prohibited.' [Citation.]"  (*Midway Venture LLC v. County of San Diego* (2021) 60 Cal.App.5th 58, 92.)  Preliminary injunctions must also "'be sufficiently precise to provide a person of ordinary intelligence fair notice that her contemplated conduct is forbidden.' [Citation.]"  (*Ibid*.)

The trial court's injunction does not run afoul of these requirements.  It clearly requires the correction of defendants' Fire Code violations as a threshold step before they can hold

13

events in conformity with current County health officer orders, and it explicitly provides the sections of the Fire Code with which defendants must comply.  Thus, while defendants contend they do not "know whether they are or are not complying with the law or the injunction[,]" their argument is essentially the same as the arguments we have already rejected in assessing the likelihood of success on the merits.  All the Fire Code violations must be remedied no matter how defendants try to partition the various spaces (outdoor or not) at the venue.

## DISPOSITION

The trial court's orders are affirmed.  The County shall recover its costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


RUBIN, P. J.


MOOR, J.


14